WYOMING HEREFORD RANCH v. HAMMOND PACKING COMPANY

(No. 1205, February 5th, 1924; 222 Pac. 1027.)

APPEAL AND ERROR—PARTIES TO APPEAL—NOTICE OF APPEAL—DISMISSAL—ADVERSE PARTY—WORDS AND PHRASES.

1. Every party whose interest in a judgment appealed from under Comp. St. 1920, §§ 6401-6415, is in conflict with the modification or reversal sought, or who is interested in sustaining the judgment or decree, is an "adverse party" within sections 6402, 6403, 6408, 6409, 6412, and hence entitled to notice of appeal, if he formally appeared in the court below, whether as plaintiff, defendant, or intervener (quoting Words and Phrases, First Series, "Adverse Party").

2. All parties to the record who are interested in maintaining the judgment or decree, as well as those whose rights will necessarily be affected by modification or reversal thereof, must generally be made parties to the appeal or proceeding in error, either as appellants or plaintiffs in error, or as appellees, respondents, or defendants in error.

3. An appeal from a decree invalidating a city's grant of the right to use waste water discharged from its sewers to a

packing company, and restraining the latter and its as-
signees from diverting the water from a creek, into
which it was returned, at a point above the point of di-
version by plaintiff, riparian owner, claiming rights there-
in, secondary only to those of the city, will not be dis-
missed before final hearing on the merits on the ground
that the city, which was named as a defendant but did
not appeal or seek to be made a party to the appeal, was
not served with notice thereof; the pleadings and judg-
ment not showing that the city, to or against which no
relief was granted, would be prejudicially affected by a
modification or reversal of the judgment or was interest-
ed in the controversy between the other parties.

APPEAL from District Court, Laramie County; WILLIAM
A. RINER, Judge.

Action by Wyoming Hereford Ranch, a corporation,
against Hammond Packing Company and others. Heard
on motion to dismiss appeal.

*Kinkead, Ellery* and *Henderson* for the Motion.

The City of Cheyenne one of the defendants below and a
party to the decree, whose rights will be affected by a re-
versal thereof, did not appeal and is not before this Court;
this Court cannot review said cause without the City of
Cheyenne being made a party, In re Big Laramie River,
192 Pac. 680, 3 C. J. 1003; Johnson v. Irri. Co., 4 Wyo. 164,
Barkley v. Schaff, 193 N. W. 267. Unless all necessary par-
ties are before the Court on appeal it will be dismissed,
Hurst v. Lakin, 114 Pac. 950; Security Co. v. Myhan, 114
N. E. 410; Mann v. Mann, 172 Pac. 777; City of Lawton
v. Burnett, 179 Pac. 753; Tupelo Co. v. Cook, 153 Pac. 164;
Edwards v. Wall, 113 S. E. 190; Chickasha Co. v. Bezdi-
check, 126 Pac. 821 and cases cited. Appellants' claim to
a prior water right is predicated upon alleged adjudications
in 1888; the contract with the City for sewage water and a
claim to title were acquired under territorial laws; these
questions were disposed of by the decree below, in which
the City was vitally interested, and the appeal cannot be
prosecuted unless it be made a party.

*W. C. Mentzer and A. R. Honnold.* contra.

The City of Cheyenne is not a necessary party to the appeal; the validity of the contract between the City and Packing Company was not put in issue by the pleadings; plaintiff merely contends that the Packing Company acquired no rights under the contract; the City's appropriation of water is not questioned; the decree below merely shows that the Packing Company abandoned certain water rights by non-user; the city did not participate in the trial below, and it was unnecessary for it to appeal, Egan v. Estrada, 56 Pac. 721; the facts differ from the Laramie River case, and from the case of Johnson v. Irri. Company, cited; the city has no interest in this controversy, Eccles v. Co., 100 N. W. 242; Basket v. Hassell, 107 U. S. 602; Anthony Co. v. Arnett, 64 Pac. 1024; Tull v. Nash, 141 Fed. 557; Postal Co. v. Vane, 80 Fed. 961; Beck v. Bono, 110 Pac. 13; Love v. Cavett, 109 Pac. 554; North Boulder Co. v. Leggett, 168 Pac. 742; What Cheer v. Hines, 53 N. W. 126; U. S. v. Expl. Co., 203 Fed. 387. Respondent is the only party seeking to avoid the contract and rights of the Packing Co., thereof. The appropriations of the City are not assailed; having no legal interest the City is not a necessary party, Basket v. Hassell, supra; Hanibal Co. v. Nortoni cited by respondent is not in point on the facts; the petition does not state a cause of action against the City nor entitle respondent to any relief as against the City; the City has a storage right; its storage waters may be acquired by others by agreement, 870 Comp. Stats, 2 Kinney 1023, and cases cited; plaintiff does not claim a prescriptive right against the City, Holt v. City, 22 Wyo. 232.

*Kinkead, Ellery and Henderson* in reply.

The action was to cancel the contract with the City and enjoin use of water thereunder, the city is therefore a necessary party, all contracting parties are necessary to an action for its cancellation, Trust Co. v. Smith, 273 Fed. 1-6; Priddy v. Co., 241 S. W. 770; Dunklin Co. v. Clarke, 51

Mo. 60; Brown v. Wilcox, 94 So. 993; Biggs v. Silvey, 79 S. E. 857; Ry. Co. v. Nortoni, 55 S. W. 220; Black on Cancellation p. 1500; the subject-matter of the contract was City Sewage, one who by contract grants to another the use of real and personal property necessarily asserts ownership thereof.

POTTER, Chief Justice.

This cause is here under the statute providing for a so-called direct appeal as a separate and independent method of reviewing causes in this court in addition to the provisions for reviewing such causes on proceedings in error. C. S. 1920, Ch. 392. And it has been heard upon a motion filed by the plaintiff and respondent to dismiss the appeal on the ground, as alleged in the motion, that the City of Cheyenne, a party defendant in the court below and a party to the judgment appealed from, and whose rights will be "affected by the reversal of said judgment" has not been made a party to the appeal, either as an appellant or respondent.

The title of the cause in the court below and here is: "Wyoming Hereford Ranch, a corporation, Plaintiff, vs. Hammond Packing Company, a corporation, City of Cheyenne, a Municipal corporation, Carleton Clinton and Oscar Turk, Defendants." The statute aforesaid provides that the title of the action shall not be changed in consequence of the appeal, but that the party taking it shall be known as the appellant and the "adverse" party as the respondent. C. S. 1920, Sec. 6403. It provides also that the appeal shall be taken by serving a notice in writing to that effect upon the "opposing" party, or his attorney, within a stated time, and that said notice shall be filed with the clerk of the district court within the same period. Sec. 6402. This appeal is taken by the defendants Hammond Packing Company, Clinton and Turk, and their notice of appeal is directed to the plaintiff and its attorneys. No appeal appears to have been taken by the City of Cheyenne, nor does it appear that the city was served with the notice of appeal.

Said statute contains no other provision defining parties to an appeal or prescribing who shall be made parties. It provides further, however, as to the service of notice of appeal and specifications of error (Id. §§ 6408, 6409) that the said specifications, within a stated time, shall be filed with the clerk of the district court and served upon "the adverse party" or his attorney, and that the said specifications and notice of appeal may be served by delivering copies thereof to the "opposing party" or his counsel within the county, etc. And it provides that the condition of a stay bond shall be, among other things, that the appellant shall pay to the "opposite party" the amount of the judgment appealed from with interest and all costs in the event he is unsuccessful. Sec. 6412.

It is apparent from the above that the question presented by the motion to dismiss is whether or not the City of Cheyenne is an "opposing" or "adverse" party within the meaning of the statute; the words "opposing" and "adverse" seeming to have been used in the same sense. It seems to be conceded that a party to the cause and judgment below whose rights may be injuriously affected by a modification or reversal of the judgment is to be considered a party adverse to the appealing party. And that is said to be the general rule. We quote from 3 C. J. 1216, Sec. 1319:

"The general rule is that all parties to the cause below whose interests may be adversely affected by the judgment on appeal are entitled to notice of the appeal, except in those jurisdictions where the appeal is taken and perfected in open court, and the appellee is bound to take notice thereof to the same extent as to the rendition of the judgment or other proceedings in the cause. * * * On the other hand, as a rule, persons not parties, or parties whose interests cannot be affected by the judgment on appeal, need not be served with notice. Notice need not be given to a mere unnecessary or formal party, * * *."

An adverse party entitled to notice of appeal is further defined as follows:

"Every party whose interest in relation to the judgment * * * is in conflict with the modification or reversal sought by the appeal; every party interested in sustaining the judgment or decree (citing cases). Every party whose interest in the subject matter of the appeal is adverse to and will be affected by the reversal or modification, * * * irrespective of the question whether such party appears on the face of the record in the attitude of plaintiff, defendant or intervener. (citing cases). * * * The 'adverse party' is the party who appears *by the record* to be adverse." (italics ours). 1 Words & Phrases, p. 224. And see Sherman v. Nixon, 36 Ida. 195, 209 Pac. 886.

An appealing party "is required to notify all other parties who are interested in opposing the relief which he seeks by his appeal, if they have formally appeared in the action in the court below." Senter v. De Bernal, 38 Cal. 642.

"It is likewise axiomatic that the term "adverse party" is not necessarily confined to plaintiffs as against defendants, or vice versa, but that defendants may be adverse to each other and that the same may be said of plaintiffs. * * * he is an adverse party whose interest would be affected *unfavorably* to him by a reversal of the judgment appealed from." (italics ours). Lidfors v. Pflaum, (Or.) 205 Pac. 277.

It was said in the late Oregon case of In Re Neil's Est., 214 Pac. 338:

"An adverse party, within the meaning of this section, is a party whose interest and relation to the decree appealed from is in conflict with the modification or reversal sought by the appeal. The parties not served did not see fit themselves to appeal, but abandoned the controversy, and no modification or reversal could affect them unfavorably."

That was said in disposing of a suggestion or motion for dismissal on the ground that certain parties who had appeared below to contest the identity and right of appellant as the heir to an estate had not been served with notice of the executor's appeal.

Applying the rule that the interest of a party must be such as would be prejudicially affected by a reversal or modification of the judgment, it was said in California, Randall v. Hunter, 69 Cal. 80, 10 Pac. 130, in a suit brought against two parties as partners upon a promissory note, one making no defense, and the other contending that it was the individual debt of the defaulting copartner:

"Now, it appears that Gill has not appealed, and the judgment appealed from was rendered against him by default. If the judgment against Hunter is reversed, it would still stand unreversed as to Gill, and therefore he would not be affected by a reversal. If the judgment is affirmed, the judgment appealed from would remain unchanged, and manifestly Gill's interest would not be affected by the judgment of affirmance. Whatever modification might be here rendered, the judgment by default would still remain against Gill. It is said that * * * Gill * * * is interested in preserving the joint judgment against him, and preventing a several judgment as to him. But his default admits that he is bound severally as well as jointly. * * * A reversal * * * would not do away with this default. It would only affect the judgment as to Hunter. * * * In this view we do not think Gill was an adverse party upon whom notice of appeal should have been served."

The case of Bank v. Casey, 158 Ia. 349, 138 N. W. 897, is to the same effect, holding that service of notice of appeal upon a defaulting partner was not ground for dismissal of an appeal by the other from a judgment against both. The court said:

"He was a coparty, and must have been served with such notice, unless it can be said that a reversal will not prejudicially affect him. Regardless of the issue as to Halverson, Casey was liable as partner, and judgment was entered against him by default. This would not be affected by any ruling in the case against Halverson, and the only contingency in which prejudice might result from passing on the errors assigned in this case would be in the settlement of the affairs between Casey and Halverson. But the judgment finally entered in this suit of plaintiff against Halverson would not constitute an adjudication in any action between Casey and Halverson for the adjustment of their partnership affairs. * * * In the settlement of their relative obligations growing out of the partnership, the most that can be said, then, is that the ruling in this case might incidentally affect evidence to be used in possible litigation between Casey and Halverson, but, as it would not be conclusive therein, it cannot be said to prejudically affect the rights of Casey."

In another and earlier, but comparatively recent, Iowa case: Capital Food Co. v. Globe Coal Co., 142 Ia. 134, 120 N. W. 704 that court said:

"The appellee has filed its motion to dismiss the appeal for failure of the appellant to serve notice of appeal upon Bothne. It is apparent from the record that Bothne cannot be affected injuriously or otherwise by the result of this appeal. Indeed, it is not clear from the record that he is a party to the case at all. His name is included in the caption. The decree recites his default; but there is no averment against him in the petition. He did not appear in the cause except as a witness, nor does it appear, except by inference, that he was served with notice. The petition asks for no relief against him. The decree awarded no relief against him, except that a judgment for costs was rendered against 'defendants.' The motion to dismiss must therefore be denied."

It appeared in the cause that defendants Wheeler and Bothne had entered into partnership for the business exclusively of buying and selling coal; that Bothne had personal charge of the business, while Wheeler put in all the capital; that Bothne made a contract with plaintiff to purchase a large amount of ''stock food, poultry food, etc.,'' the contract being made by Bothne in the partnership name of The Globe Coal Co. Plaintiff had sued the Coal Company by serving notice upon Bothne alone and obtained a judgment against the partnership on account of that contract. No attempt was made to obtain a judgment against Wheeler as a member of the partnership. The court stated that so far as disclosed by the evidence, the said contract with plaintiff was outside the scope of the partnership business; and the only right sought by the plaintiff in the action then before the court was to collect its judgment out of partnership property, which had been turned over to Wheeler upon the dissolution and settlement of the partnership as between the partners. Wheeler was the appellant.

In Wescott v. Sioux City, 141 Iowa. 453, 119 N. W. 749 an action was brought to set aside a deed made by a ''Library & Building Association'' to the city, upon the ground that it was without consideration, and was fraudulent and void because made with intent to hinder and defraud creditors. The library association was made a party, and being in default, a decree was rendered against it. Later upon trial of the issues presented by the city a decree was also entered against it. The city alone appealed without serving notice on the library association. The court disposed of a motion to dismiss upon the ground that notice was not served upon the library association by saying:

''Reduced to its last analysis, the case is an ordinary one wherein a judgment creditor is seeking, by a bill in equity, to subject property standing in the name of a stranger to payment of his judgment, upon the ground that this stranger, by reason of fraud or otherwise, holds the title in trust, subject to the payment of his claim. This trust may grow

out of a showing of fraud or want of consideration for the conveyance, or it may be shown that the title is in fact held in trust subject to the payment of all just debts of the grantor. In such case the grantor, while a proper, is not a necessary party. Potter v. Phillips, 44 Ia. 353; Harlin v. Stevenson, 30 Ia. 371; Dunn v. Wolf, 81 Ia. 688. This is upon the theory that, as the grantor has parted with all his interest in the property, he is concluded by the conveyance from claiming any interest therein. This being true, it was not necessary for the city to serve its notice of appeal upon the library association, for, no matter what the final decree here, its interests cannot be injuriously affected. In Wright v. Mahaffey, 76 Ia. 96, it is clearly held that notice of appeal need not be served upon the grantor, although made a party to the proceedings.''

In another Iowa case, Snyder v. Richey, 150 Ia. 737, 130 N. W. 922 the court said:

''It is further contended that the appeal should be dismissed because notice thereof was not served on some of the codefendants who had made default. To this contention there are two sufficient answers. The first is that the interest decreed to these codefendants in the proceeds of the sale of the property can not be decreased by any decree which can now be entered if appellants succeed in their appeal, and the result of sustaining plaintiffs' contention will be to reduce the amount allowed to defendant Richey and increase the amount to be distributed to plaintiffs and Richey's codefendants.''

There is another matter that may be considered in disposing of this question, viz: Whether the City would have an appealable interest in the judgment brought here by the present appeal, and if not, whether it could be regarded as a necessary party to the appeal. It is said in 2 Ency. Pl. & Pr., 161:

"An appealable interest exists when the judgment or decree so affects a party or privy to the record that he would derive a substantial benefit from its modification or reversal."

And again in the same volume, on page 190:

"Since the right of appeal vests only in, parties prejudicially affected by the judgment or decree appealed from, a party who has no appealable interest need not be joined on an appeal taken by his co-party. But every party to the judgment or decree united in interest with the appellant, and substantially affected by a reversal or modification of the judgment or decree, is a necessary party."

In the case of Soderberg v. McRae, 67 Wash. 104, 120 Pac. 878, it was held that defendants, not in possession and filing disclaimers, were not entitled to appeal from a judgment for plaintiffs, and that the remaining defendants could appeal without serving notice upon them, though they were mentioned in the decree. The court mentioned the fact that certain defendants who had appeared in the action, Tennant and Ballinger, had not been served with notice of appeal; that the action was one to quiet title, and that the only allegation of the complaint relative to the said parties was that they were trustees of a defendant corporation alleged to have been dissolved; that no service was made upon them, but on the date of the trial they filed an answer without knowledge of appellants. And the court further stated said answer, not verified, contained admissions of certain allegations of the complaint, and denied others for want of knowledge or information sufficient to form a belief as to their truth or veracity, and did not plead any affirmative defense, or contain any prayer for dismissal, for costs, or for any relief whatever. The court further stated that no costs were awarded to or against said parties, and that sometime afterwards the appellants, having learned of the answer of said

parties, procured from them and filed a disclaimer. The court then said:

"We attach no importance to this (last) statement, further than its indication that Tennant and Ballinger themselves construed their answer to be a disclaimer.    *    *    * We conclude, for reasons hereinafter stated, that the defendants, Tennant and Ballinger, were at no time entitled to prosecute an appeal from the final decree. This is an action to quiet title. The respondents, claiming the real estate, made Tennant and Ballinger parties defendant. If Tennant and Ballinger, who were not in possession, held or claimed any interest, lien, or title in or to the real estate, the duty devolved upon them    *    *    * to plead the same. Failing to do so, they could either default or appear and disclaim. They appeared, but their answer amounted to a disclaimer; and thereafter they ceased to have any interest in the controversy. They failed to plead any title, interest, or possession in themselves, and,    *    *    * could offer no evidence thereof. This being true, the demands of their answer amounted to a disclaimer only. We therefore conclude that appellants' failure to serve them with notice of appeal was not a fatal omission. It is apparent that appellants have served all defendants who, to their knowledge, did appear, and all who have any possible interest; that in so doing, they brought before this court all parties necessary to a determination of any issue that can be raised upon the appeal; and that no party has been deprived of his right to an original appeal or a cross-appeal. This being true, it would require too harsh a construction of the appeal statute to hold the notice defective for want of service upon the defendants, Tennant and Ballinger."

In another Washington case, the court said with reference to one of the parties that, not being an aggrieved party, there was no judgment from which he could appeal and hence he was not a necessary party to the appeal by another, so that failure to serve him with notice thereof neither pre-

judiced the respondent, nor prevented her from taking an original or cross-appeal against him if she desired so to do. In Skinner v. Moore, 64 Kan. 360, 67 Pac. 827, 91 Am. S. Rep. 244 the court said:

"Other parties were made defendants in the court below. The petition alleged that they 'claim to own or hold some right, title, or interest in and to the above described real estate.' They have not been made parties here. There is no judgment for or against them appearing in the record. They seem to have dropped out of the case. The allegations of the petition were insufficient to state a cause of action against them. A failure to make them parties to this proceeding in error is no ground for dismissal."

The general rule as to parties in appellate proceedings has been stated by this court as follows, in Pioneer Canal Co. v. Akin, 27 Wyo. 88, 192 Pac. 680, 193 Pac. 734:

"All parties to the record who are interested in maintaining the judgment or decree must, as a rule, be made parties to the appeal or proceeding in error, either as appellants or plaintiffs in error, or as appellees, respondents, or defendants in error, as must also those whose rights will necessarily be affected by any modification or reversal of the judgment or decree appealed from.   *   *   *   All the parties to a suit or proceeding who appear from the record to have an interest in the order, judgment, or decree challenged in the appellate court must be given an opportunity to be heard there before that court will proceed to a decision upon the merits of the case."

In that case the court was considering a motion to dismiss a proceeding in error for the review of a district court judgment upon appeal from an order of the state board of control adjudicating the individual rights to the use of water from a certain natural stream and its tributaries, as to which proceeding before said board the statute provided

that in case of an appeal to the district court "all persons having interests adverse to the party appealing or either of them shall be joined as appellees." The court said that the procedure for that adjudication was adopted to carry into effect the constitutional provision for the supervision of appropriated waters, and provide an orderly record of individual appropriations according to quantity and priority; and that said procedure aimed eventually to secure orderly findings and decision of the quantities and priorities in time of those who had appropriated to beneficial use the waters of the various rivers and creeks in the state. And it was held as to such procedure that each appropriator named is a party with an individual right, and in that sense antagonistic to each other claimant, and therefore that each was necessarily interested, if not appealing, in sustaining the judgment. And the court, expressing that view, said:

"A reversal of the cause therefore would require an order for a new trial, which would open the case as to every one of the parties, and to a rehearing of each of the claims of all of the parties.   *   *   *   Each party, to a certain extent at least, becomes an adversary to every other party."

The decision in that case is not, in our opinion, controlling upon the facts in this case, and the case is in point only so far as it states general principles to be considered in determining who or who may not be necessary parties to an appellate proceeding. A proceeding under the statute initiated by the board of control for an adjudication of priorities of rights to the use of the waters of a natural stream, under its powers of *supervision* granted by the Constitution (See Farmers Investment Co. v. Carpenter, 9 Wyo. 110, 61 Pac. 258, 50 L. R. A. 747, 87 Am. St. Rep. 918 has been held to be administrative rather than judicial, affecting individual appropriations, and concerning the adjudication of water to individual claimants. And this court said in the last cited case:

"The procedure is one in which a claimant does not obtain redress for an injury, but secures evidence of title to a valuable right—a right to use a peculiar public commodity. * * * The Board, it is true, acts judicially, but the power exercised is quasi-judicial only, and such as under proper circumstances may appropriately be conferred upon executive officers or boards, * * * But the proceeding is instituted by the Board, * * * for the purpose of ascertaining the precise rights and priority of each appropriator, to the end that the public records may be furnished an accurate and defined statement thereof, and as an aid to adequate and effective state control of the public waters. A part of the object also is public recognition of an appropriation previously made, and the issuance of documentary evidence of title."

It is evident that such a proceeding differs materially, with respect to the question now under consideration, from a proceeding by one whose right as an appropriator of the stream has been adjudicated against another appropriator with or without adjudicated rights, brought in a court to determine a controversy between them as to their respective priorities, one party claiming that the other has deprived or is threatening to deprive him of the use of water to which he is entitled by virtue of his priority. That difference is fairly illustrated in Winters v. U. S., 207 U. S. 564, 28 Sup. Ct. 207, 52 L. ed. 340 and numerous other cases which might be cited, some of which are cited in the appellant's brief upon this question. The United States Court of Appeals for the 8th circuit, in United States v. Exploration Co., 203 Fed. 387, 121 C. C. A. 491 in a suit to set aside as null and void certain patents for coal lands, when disposing of a motion to dismiss the appeal for the reason that one Burrell, a party defendant in the court below, had not been made a party to the appeal, said:

"We do not think the record shows that Burrell had any interest in the subject matter of the suit. There is a general

allegation in the bill that the defendants, including Burrell, claimed some interest in the lands in controversy; but this allegation must be construed as to Burrell with reference to the specific allegation that he was simply a conduit through which the title of the lands passed to one Smith, and that he had no beneficial interest therein. Taking the allegation of the bill to be true, no relief could be granted therein against Burrell.''

Many other cases stating and applying the aforesaid principles might be cited, but we think a further citation of cases unnecessary, especially as we shall not at this time finally dispose of the motion to dismiss. We have not examined the evidence or any other part of the proceelings than the pleadings, the judgment, and the notice of appeal. And we are not convinced upon an examination of the pleadings and the judgment in the light of the pleadings, that the city is a necessary party to this appeal.

As we understand the issues in the case, it is primarily a suit brought to determine a controversy between the plaintiff and the defendants Hammond Packing Co., Clinton and Turk concerning the priority of rights to the use of the waters of Crow Creek as enhanced by the waste water emptied therein from the sewerage system of said City, the plaintiff claiming to have a right thereto prior to any right of said defendants, and the defendants claiming rights to said water through diversion at a point on the stream above the point of plaintiff's diversion. Two causes of action are alleged in the petition, each based upon a separate appropriation. It is alleged in the first cause of action that the plaintiff is the owner of an adjudicated water right from said stream for the irrigation of certain lands owned by it, and that it has used water under said appropriation since and long prior to April 18, 1888, the date of the said adjudication in the district court, under a statute for such purpose then in force. That by said adjudication decree, the City of Cheyenne was granted a first and superior right to a

stated quantity of water of said stream for the domestic use of its inhabitants and for municipal purposes. That since said decree the city has appropriated and impounded, through a system of dams and reservoirs, practically the entire flow of the Crow Creek waters, and, claiming the right to do so, it will continue to appropriate and impound said waters at a point above plaintiff's lands and the point of diversion for their irrigation. That said water so impounded by the city is used partly for the maintenance of a sewerage system, and that a large portion of it has been and will be used by said city for the purpose of diluting and carrying off solid sewerage matter, so that a large part of the water so impounded and appropriated is and will continue to be carried away through its sewerage system. That said waste water, by means of said sewerage system, is returned to Crow Creek at or near the south boundary of the city and approximately two miles above plaintiff's irrigated land. That said flow of water for use by the plaintiff has been mainly composed of such waste water, and has been sufficient to satisfy its said right, but that any impairment of the flow will so reduce the quantity as to render it insufficient for the irrigation of plaintiff's lands. That after said city has used the water for the purpose of its said appropriation, it has no right thereto except to convey and return the same to Crow Creek. That on or about January 3, 1922, the city entered into a written contract with the defendant Hammond Packing Company, purporting to grant to that company the right to said sewerage and waste water, and to perpetually authorize it to divert and take all of said water so discharged from the city's sewerage system and use the same to its own use and benefit. That said defendant Packing Company has assigned an interest in said contract to defendants Clinton and Turk, and that said last named defendants, and each of them, are threatening to and will proceed under said contract to divert and use the waste sewage water to plaintiff's irreparable loss and damage, unless prevented by the equitable interposition of the court. That

said defendant company and defendants Clinton and Turk each assert some claim aside from the said contract to the rights of the water of Crow Creek for irrigation purposes, and are alleging that their said right is superior to and prior to the rights of the plaintiff; but that each of their said rights is subsequent to and inferior to the right of plaintiff. The second cause of action contains similar allegations.

The contract between the City and the Hammond Packing Company attached to the petition and forming a material part of it, provides substantially as follows:

That the Hammond Packing Company, named as the party of the first part, in consideration of one dollar and other good and valuable considerations, paid by the City of Cheyenne, party of the second part, receipt whereof is acknowledged, does grant to said party of the second part, its successors or assigns, the right and authority to enter into and construct, operate and maintain its lines of sewers over and above a certain strip of land of a stated width on each side of the center of said sewers: First, what is described as "Sanitary Sewer Trunk Line of the City of Cheyenne," described by metes and bounds from a certain point "to the outfall works of the Trunk Line Sanitary Sewer connecting with the diverted channel of Crow Creek at that point;" all the above described trunk line sanitary sewer and outfall works "being at the present located and constructed in place." Second, what is described as "Sanitary Sewer east of Lake Minnehaha," described by metes and bounds beginning at a certain point "to the outfall works of the fifteen-inch sanitary sewer, known as the 'East Minnehaha Sanitary Sewer;' said outfall works connecting the above described fifteen-inch sanitary sewer with the irrigating ditch of the Hammond Packing Company.   *   *   * All of the above described fifteen-inch sanitary sewer and outfall works being as now located and constructed in place." And the said first party "hereby covenants and agrees to keep open at all times the said irrigation ditch with

which said sanitary sewer of Lake Minnehaha is connected and to, at all times, keep open the said diverted channel of Crow Creek, with which the said sanitary sewer trunk line of the City of Cheyenne is connected.  In case the sewerage discharged at the outlet of either of said sewers should at any time become obnoxious or a public nuisance, the said second party (the city) agrees to install and continuously maintain the necessary sewerage disposal system to purify the said sewerage as it enters said ditches or either of them. The said second party (the city) hereby grants and conveys to the said first party, its successors and assigns, the perpetual right to use the waters and all of the same emptied from the sewers hereinbefore described; except, however, the said second party reserves the right to use so much of said water as may hereafter become necessary to operate any sewerage disposal system or systems which it might hereafter install.

The petition prays substantially as follows:

1.    That the contract marked Exhibit "A", in so far as it purports to grant to the Hammond Packing Company the right to use the discharge or waste water collected in the said sewerage system and emptied therefrom into the waters of Crow Creek or otherwise, be declared null and void.

2.    That the said city, its officers, employees, etc., be restrained from granting, permitting, authorizing, aiding or abetting the said Hammond Packing Company or any assigns, successors or transferee thereof, in diverting or using from the waters of Crow Creek any sewage or waste water which has been appropriated by the city from Crow Creek and emptied from its sewerage system into said creek.

3.    That said city be restrained from disposing of, or attempting to dispose of, any sewage or waste water appropriated by the city from Crow Creek, except by a system of disposal whereby the same is returned, either purified or unpurified, to the waters of Crow Creek so that the same may become subject to the use of the plaintiff under its said water rights.

4.    That the defendants, Hammond Packing Co., Clinton and Turk, be perpetually restrained from taking or using any of the waters of said Crow Creek or diminishing the water thereof in any manner until the plaintiff's prior rights of appropriation be fully satisfied.

5.    That plaintiff's alleged water rights be decreed to be prior and superior to any right, title, claim or interest of the defendants Hammond Packing Company, Carlton Clinton and Oscar Turk, and either of them.

The city appeared separately by the city attorney filing an answer, admitting: 1. That it is a municipal corporation, organized and existing under a special charter granted by the Legislature of Wyoming Territory.    2. The allegations of paragraph 4 of the first and second causes of action, which we understand is intended to refer to the third paragraph of the first cause of action and the fourth of the second cause of action, since there is no paragraph numbered 4 in the first cause of action; the one numbered 3 being followed by 5; and No. 3 of the first and 4 of the second cause of action being substantially the same.    So that the effect, as we think intended by said second admission, is to admit averments stating the names of the Mayor and Commissioners of the city constituting the city council at the date of the contract aforesaid and also when the petition was filed. 3. That it executed the contract attached to the petition and marked Exhibit ''A''.    And it then proceeds:    ''4. As to the allegations in said petition contained, not herein specifically admitted, defendant is without information as to the truth and veracity of said allegations and therefore denies each and every of the same.''    It then prays that plaintiff's petition be dismissed as to the defendant city, and that the city may have and recover its costs.

The defendants Hammond Packing Company, Clinton and Turk, jointly filed a separate answer, admitting certain facts alleged in the petition and denying others; specifically admitting that the City has a first priority right to the waters of Crow Creek, and denying all averments as to the

priority of the rights of the plaintiff to the waters of Crow
Creek, and alleging prior and superior rights in the defendants to said waters, not only by a prior appropriation,
but also as to the sewage water under said contract. A reply was filed to that answer. And upon a trial of the cause
before the court without a jury, a judgment was entered
stating that the court "finds generally in favor of plaintiff,
and against the defendants, and each of them, upon all the
issues in plaintiff's first cause of action;" that the plaintiff
is entitled to a permanent injunction restraining the Hammond Packing Company, Carlton Clinton and Oscar Turk,
and each of them, their agents, employees, etc., from taking, or by any means diverting the waters discharged from
the outfall sewers of said city, described in the contract
aforesaid, "so as to in any way or in any manner interfere
with, obstruct or prevent the use of said waters by the
plaintiff under its appropriations, priority and water rights
numbers Five and Nineteen of the adjudicated water rights
of Crow Creek proper" as adjudicated by the decree of said
court on April 18, 1888. That the court finds in favor of
plaintiff and against defendants and each and all of them
upon all of the issues in plaintiff's second cause of action,
with the exception that the appropriation of defendants
Packing Co., Clinton and Turk, if any, through or by means
of the ditch known as the "Gordon" or "Granger" ditch,
to the use of the waters of said creek or the waters discharged from said outfall sewers, is prior and superior to
plaintiff's water rights alleged in its second cause of action
through the ditch known as the Bolln ditch. That the plaintiff is entitled to a permanent injunction enjoining the said
Hammond Packing Company, its officers, agents, etc., the
defendants Clinton and Turk, their agents, employees, etc.,
from taking or by any means diverting the waters of said
Creek or the waters discharged from said outfall sewers,
except by the diversion and use through the said Granger
or Gordon ditch of that quantity of water to which either
of said three defendants may be entitled under the appro-

priation by means of said ditch, so as to interfere with, obstruct or prevent the use of said waters by plaintiff under its alleged appropriation through the Bolln ditch. The judgment then declares that it is ordered, adjudged and decreed substantially as follows:

1. That the territorial water rights adjudicated to either of said three defendants or any predecessor in interest were, long prior to the commencement of this action, forfeited and abandoned as against the plaintiff by and through nonuser.

2. That the said contract between the Packing Company and the city "was and is invalid, * * * in so far as it purports to bind said defendant city to deliver any of the sewage or waters discharged by the sewers of said city mentioned therein to said defendant, Hammond Packing Company, or to give or grant said defendant any right or interest therein, or to a delivery thereof, and said contract in said particulars is hereby declared to be invalid, null and void, and of no force or effect;" and that said defendants Packing Company, Clinton and Turk, are not entitled to the use or any part of the waters of Crow Creek or waters discharged from said outfall sewers "under or by virtue of said contract."

3. That plaintiff's adjudicated priorities of water rights No. 5 and 19 of said decree of 1888 for the use of the waters of said creek and the waters discharged from the said sewers are prior and superior to any right of the said defendants Packing Company, Clinton and Turk.

4. That the rights of plaintiff to said waters through the Bolln ditch is prior and superior to any right of either of said three defendants "except the right of either of them, if any they have, to the use of said waters through the appropriation of the Gordon or Granger ditch."

5. That the defendant Packing Company, and the defendants Clinton and Turk, and their several officers, agents and employees, etc., are perpetually enjoined from taking

any/ of said waters so as to interfere with the plaintiff's rights as found by the court. .

6.  To the same effect as the 5th paragraph as to the plaintiff's water rights alleged in the second cause of action, but excepting such right as either of said defendants may have under the Gordon or Granger ditch.

7.  That the costs of the action be paid: Three-fourths thereof by the defendants Hammond Packing Company, Clinton and Turk, and one-fourth thereof by the plaintiff.

It thus appears from the decree that no relief was granted either for or against the city and it was relieved of any liability for costs by the order that they be paid in certain proportions by the other parties.  While it was adjudged by the decree that said contract with the Hammond Packing Company was invalid "in so far" as it purports to bind the city to deliver the waste water from its sewerage system to the Packing Company, or to grant said Company any right therein, no relief against the city was granted in consequence of that.  And hence we incline to the opinion that such declaration in the judgment is to be regarded as affecting only the rights of the plaintiff and the defendants Hammond Packing Co., Clinton and Turk, as between themselves, to the use of the waters of said stream inclusive of the sewage waste water.  And it may be at least doubtful, looking only to the pleadings and the decree, whether the court could have gone further in that respect than to hold the contract invalid so far only as necessary to protect the plaintiff against an improper or unlawful impairment of its priority of water rights, and that is probably all that was intended.

We doubt, therefore, that the city would have an appealable interest in the judgment, such as would bring it within the statute for service of notice of appeal upon the adverse party, or that the effect of the decree is anything more than to determine the rights of the other three defendants and the plaintiff respectively to the use of the waters aforesaid, and to grant the appropriate relief by enjoining interfer-

ence with plaintiff's adjudged rights by the said three defendants. Hence we fail to perceive how the city can be in any way concerned in or unfavorably or prejudicially affected by a modification or reversal of the judgment appealed from. Again the city as the grantor only of the right to use the sewage water under its said contract may not be necessarily interested in the controversy about such use between the other parties.

It seems to be argued by plaintiff's counsel that the main purpose of the suit was to enjoin the city from carrying out its contract with the Hammond Packing Company. If so, the plaintiff was defeated in that purpose; and certainly it cannot expect to obtain any such relief on this appeal. The city appears to be satisfied with the decree, for it has not appealed and is not seeking to be made a party to this appeal. Indeed, its answer amounted almost to a disclaimer of any interest in the controversy. It admitted its character as a municipal corporation, the alleged names of the members of its governing body, and that it signed the alleged contract; then, denying every other allegation for lack of information as to the truth, it prayed for a dismissal of the petition as to the city. And the judgment might perhaps be considered as having the practical effect of such dismissal, for by it the city seems to have been eliminated from the case.

We do not, however, dispose of the motion at this time, reserving the matter for final disposition until the hearing upon the merits, when, if still insisted upon by the plaintiff, the question raised by it may again be considered. An order will be entered accordingly.

Blume and Kimball, JJ., concur.

NOTE—See 3 C. J. pp. 1005, 1014, 1218, 1239 (1925 Anno.)