IN THE MATTER OF THE APPLICATION OF DAN FILIP-PINI TO THE STATE ENGINEER OF THE STATE OF NEVADA, FOR PERMISSION TO APPROPRIATE THE WATERS OF DUFF CREEK, No. 11450.

No. 3533

January 28, 1949.

202 P.2d 535.

*Orville R. Wilson,* of Elko, for Appellant.

*Alan Bible,* Attorney General, *W. T. Mathews,* Special

Assistant Attorney General, and *George P. Annand* and *Homer Mooney,* Deputy Attorneys General, for Respondent State Engineer.

*McNamara & Robbins,* of Elko, for Respondent Dan Filippini.

## OPINION

By the Court, WINES, District Judge:

This matter comes to this court on an appeal after the following had occurred:

The respondent, Dan Filippini, made application, in the form prescribed by statute, to the office of the state engineer to appropriate a portion of the waters of Duff Creek, situate in Eureka County, Nevada. The appellant, Dewey Dann, filed a protest. The state engineer proceeded to make a field examination, and thereafter issued a "ruling" granting the application. This was done without any notice being given to Dewey Dann, and although the state engineer permitted the filing of the protest, no effort was made to comply with the statute, section 7947, N.C.L.1929, regarding protests. Whereupon the appellant, pursuant to section 7961, N.C.L.1929, filed his complaint in the Third judicial district court of the State of Nevada, in and for the county of Eureka. The defendants named in the action were the state engineer and Dan Filippini. They appeared in the action and demurred to the complaint on general and specific grounds. The matter was submitted on briefs, and the district court made and entered its order sustaining the demurrer on all grounds taken, and allowing the appellant time to amend. This he declined to do within the time allowed, or thereafter, and the district court made and entered a judgment dismissing the

action. From this judgment the appellant takes this appeal.

It will not be necessary to copy the pleadings into this opinion, as an examination of the record and the arguments of counsel has enabled us to arrive at the following as a proper statement of the initial issue before us:

The paramount issue in this case is—can a water right be acquired by prescription, i. e., by adverse use for a period of five years, against an owner of a water right which vested by diversion and beneficial use prior to 1903 and the enactment of any statutory water law, when the period of adverse use was initiated in the year 1933, and, following the enactment of the statutory water law of this state, which body of law had its inception in the year 1903 and was consummated, except as to minor matters, in that act known as the Water Law of 1913. N.C.L.1929 sec. 7890 et seq. The procedural complement of this issue is concerned with the right of such an adverse user of a vested right to assert his claim by means of a protest to an application to divert and use such waters, made pursuant to the water law, and upon an adverse ruling to make application to the proper court in the manner provided by the water law of 1913.

Often the import of an issue stated in this manner is not apparent unless the terms used in stating it are prescribed. For this reason, and because it will assist, in this instance, in reaching a conclusion upon the issue, some of the terms here used will be defined.

■ ■ The term "water right" means generally the right to divert water by artificial means for beneficial use from a natural spring or stream. Boyce et ux. v. Killip et ux., Or., 198 P.2d 613. When we speak of the owner of a "water right" we use the term in its accepted sense; that is to say, that the owner of a water right does not acquire a property in the water as such, at least while flowing naturally, but a right gained to use water beneficially which will be regarded and protected as real

property. Nenzel et al. v. Rochester Silver Corp., 50 Nev. 352, 259 P. 632.

■■ The term "vested rights," as that term is used in relation to constitutional guarantees, implies an interest it is proper for the state to recognize and protect and of which the individual could not be deprived arbitrarily without injustice. City of Los Angeles v. Oliver, 102 Cal.App. 299, 283 P. 298. It is some interest in the property that has become fixed and established. Evans-Snider-Buel Co. et al. v. McFadden et al., 8 Cir., 105 F. 293, 58 L.R.A. 900. See, also, vol. 44, Words and Phrases, Permanent Edition, page 203. When used in connection with a water right, the sense of the term is immediately apparent. It means simply that a right to use water has become fixed either by actual diversion and application to beneficial use or by appropriation, according to the manner provided by the water law, and is a right which is regarded and protected as property.

The term "vested right" is sometimes used to describe water rights which came into being by diversion and beneficial use prior to the enactment of any statutory water law, relative to appropriation. We use it here, however, as a term describing a water right which has become fixed and established either by diversion and beneficial use or by permit procured pursuant to the statutory water law relative to appropriation.

■ One of the ways of acquiring the right to use of water before 1903 was by diversion and beneficial use. The doctrine of appropriation is the settled law of this state. Reno Smelting Works v. Stevenson, 20 Nev. 269, 21 P. 317, 4 L.R.A. 60, 19 Am.St.Rep. 364. "Appropriation," prior to the enactment of the water law, was defined by this court as: "An actual diversion of the [water], with intent to apply it to a beneficial use, followed by an application to such use within a reasonable time." Walsh et al. v. Wallace et al., 26 Nev. 299, 67 P. 914, 917, 99 Am.St.Rep. 692.

■■ We have seen that appropriation is an original acquisition from the government by diversion and use.

Hence, there can be no appropriation by prescription. State v. Quantic, 37 Mont. 32, 94 P. 491; Jackson v. Indian, etc., Co., 18 Idaho 513, 110 P. 251. In order that there may be an adverse use, a superior right must be infringed. Egan v. Estrada, 6 Ariz. 248, 56 P. 721; Clark v. Ashley, 34 Colo. 285, 82 P. 588. No rights can be gained against or from the government by prescription. Hence an appropriation is a method of acquiring a right to the use of water from the government and the acquisition of a right by adverse use contemplates a right already in existence, and acquired as such by adverse use from the owner thereof. The acquisition of a right to use water by prescription has been defined by this court in the case of Authors v. Bryant, 22 Nev. 242, 38, P. 439, 440, as follows: "In order to establish a right by prescription to the use of water claimed by another, the use and enjoyment must have been uninterrupted, adverse, and under claim of right, and with the knowledge of the owner." Adverse possession of the use of water is governed by the same rules as adverse possession of land, Vansickle v. Haines, 7 Nev. 249; and the period of such use must be for five years. Ennor v. Raine, 27 Nev. 178, 74 P. 1; section 8517, N.C.L.1929.

The Water Law of 1913, Public Act c. 140, Statutes of 1913, page 192, and those acts which preceded it, is a body of law relating to water and its use within the State of Nevada. It is entitled as an act providing for a system of state control, creating the office of the state engineer, providing for a system of distribution and use of water, and providing for the appropriation, use and distribution of water. We shall have something to say as to the purposes of this body of law in connection with our next subject, the meaning of the word "appropriation" under this law.

We have intentionally delayed our definition of this term under the water law, since we are aware that our definition of the word will go a long way toward supporting or defeating the respondents' contention. The respondents' contention amounts simply to this—that

the water law of 1913 provides for the only means of acquiring a right to use water, except by purchase, since 1913. If sustained, this contention would obviate the possibility of obtaining a water right from the owner by adverse use. The law, being section 2 of the act, and section 7891, N.C.L.1929, states: "Subject to existing rights, all such water may be appropriated for a beneficial use as provided in this act and not otherwise." "All such water" has reference to section 1, being section 7890, N.C.L.1929, which provides that the water of all sources of water supply within the boundaries of the state, whether above or beneath the surface of the ground belongs to the public. We have above noted that appropriation is a term having a definite meaning in this state. This court has already held in Re Manse Springs, etc., 60 Nev. 280, 108 P. 2d 311, 315, that: "The right of use may be obtained in a certain way. The state having a right to designate the *method of appropriation.*" (Emphasis supplied.) We take this as importing that the meaning of the word "appropriation" in the sense that it is an acquisition of a right to use unappropriated water from the government is in no way changed. The manner in which one might lawfully proceed to acquire right to use water from the government has been modified by statute, but the character of the act remains, as ever, an acquisition of a right to use water from the government.

In construing the statute we have had in mind that words should be given their plain meaning unless this violates the spirit of the act. Ex parte Zwissig, 42 Nev. 360, 178 P. 20; and that technical words and phrases having a peculiar meaning in law are to be understood according to their technical import. In re Estate of Lewis, 39 Nev. 446, 159 P. 961, 4 A.L.R. 241. Finally where the legislature uses words which have received judicial interpretation, they are presumed to be used in that sense unless the contrary intent can be

gathered from the statute. Latterner v. Latterner, 51 Nev. 285, 274 P. 194.

Respondents' argument, on the other hand, implies that the literal sense will not be permitted to prevail over intent. State ex rel. O'Meara v. Ross, 20 Nev. 61, 14 P. 827; and they insist that this construction violates the purpose and intent of the water law. The intent and purpose of the water law, it is argued, was to bring order to such matters by requiring users of water to discover what they can do from an agency of the state (Citing Wyoming Hereford Ranch v. Hammond Packing Co., 31 Wyo. 31, 222 P. 1027; Id., 33 Wyo. 14, 236 P. 764) before proceeding to do whatever is necessary to acquire a water right. This court has on several occasions discussed the purpose and intent of the water law. In State ex rel. Hinckley v. Sixth Jud. Court, 53 Nev. 343, 1 P.2d 105, it was held that the water law must be interpreted in the light of the intention of the legislature that people who are entitled to water of a stream system actually get it without needless waste or controversy. The learned Justice NORCROSS in Ormsby County v. Kearney, 37 Nev. 314, 142 P. 803, 805, stated: "It is manifest, both from the title and body of the act, that one of the main purposes of this law, and doubtless the principal purpose, was to place the distribution of the waters of the streams or stream systems of the state to the persons entitled thereto, under state control. * * * The public welfare is very greatly interested in the largest economical use of the waters of the state for agricultural, mining, power and other purposes." We do not consider this contrary to our construction of the statute. On the other hand, we find nothing in the law or in those opinions interpreting it that would support respondents' contention. Agreement with respondents would require reading into the law provisions which are not there. The rule which respondents seek to avail themselves of has no application unless the legislature

has in some manner spoken on a subject. By limiting the sense of the word "appropriation" to the usual and accepted meaning, we do not ignore any expressed purpose and counsel has not, nor do we find in the law anything which would support the construction insisted upon.

This is also in accord with a distinction made above; namely, that an appropriation is a method of acquiring a right to the use of waters from the government. The acquisition of a right by adverse use contemplates a right already in existence and acquired by such use from the owner thereof. In the case of In re Manse Springs, etc., supra, we find a brief discussion of this point. This court there said on this point: "The 1913 Water Law left those who had acquired water rights prior to its enactment in the enjoyment of said rights, but did undertake to provide means of ascertaining what those rights were, and also set up other methods of control." The court also pointed out that the law "expressly excluded from the operation of the provisions of the statute any vested rights which would be impaired thereby."

In the case of Carpenter v. Sixth Judicial District Court, 59 Nev. 42, 73 P. 2d 1310, 84 P. 2d 489, we find further support for our view. This court there approved the statement that the water law is intended to provide a method whereby unappropriated water might be appropriated, as providing a means for determining without delay the relative rights of appropriators of waters of public streams, and to enable the state to supervise and administer the distribution of waters.

It is settled that a right to use water might be acquired by adverse use prior to the enactment of the water law. Authors v. Bryant, supra. And we note here, that in a sister state where conditions relating to water, the use thereof and distribution, and where the statutory law is very similar to that of this state, that the supreme court of that state held that a right to use water might be acquired by adverse use for the prescribed period providing all other elements of adverse

use and possession were shown. Hammond v. Johnson, 94 Utah 20, 66 P. 2d 894; Wellsville, East Field Irr. Co. v. Lindsay Land & L. Co., 104 Utah 448, 137 P.2d 634. We are not prepared to overrule the case of Authors v. Bryant, supra, at this time, nor do we propose to read into the law something that we do not find stated there even by implication.

We have not reached the foregoing conclusion without misgiving, and had we been able to find in the water law legitimate grounds to do so, we would have upheld respondents' contention. The only other alternative would· have been to overrule Authors v. Bryant, supra, or write into our law a new and expanded interpretation of the term "appropriation." This we are not inclined to do on an issue which to a very considerable extent involves the fixing of a policy.

There are, however, compelling reasons for determining a policy and for arriving at a conclusion on this question which would favor the respondents' contention.

■ First of all, there seems to be no question that the state had and has the constitutional power to control and regulate the public waters of the state, and to provide how and in what manner the use of such water can be obtained. Ormsby County v. Kearney, 37 Nev. 314, 142 P. 803; Vineyard Land and Stock Co. v. District Court, 42 Nev. 1, 171 P. 166; Bergman v. Kearney, D.C., 241 F. 884; In re Water Rights in the Humboldt River Stream System, 49 Nev. 357, 246 P. 692.

■ It is also settled in this state that the water law and all proceedings thereunder are special in character, and the provisions of such law not only lay down the method of procedure but strictly limits it to that provided.

It is well established that under a water law so similar to ours as to be almost identical, that a water right by adverse ·possession cannot be acquired. See Wyoming Hereford Ranch v. Hammond Packing Company, 31 Wyo. 31, 222 P. 1027; Id., 33 Wyo. 14, 236 P. 764. In that case the Wyoming court made a most exhaustive

examination of the Wyoming constitution and statutory law relating to the appropriation of and use of water. The Wyoming law is very similar to that of Nevada, and with respect to the appropriation of water it is substantially identical. The court applied the law, as it found it to be, to the facts in the case—holding that since the enactment of the Wyoming statute in 1890, a lawful appropriation of water could not be made without an application to the board of control for permit to appropriate such water. It is to be noted that section 34 of the Wyoming law is substantially the same as section 59 of the Nevada law, i. e., section 7944, N.C.L.1929.

The reasons for the amendment to the Wyoming constitution, with respect to water rights, are found to be the basis of respondents' argument in this case and were that it would prevent litigation and dispute, and require an orderly procedure by one seeking to acquire a right to use water.

We submit that the foregoing reasons are most applicable to the Nevada law and the situation existing in the State of Nevada. Such reasons prompted the enactment of the Nevada water law and such reasons dictate today that adverse use is wholly unwarranted, unnecessary and clearly dangerous to the appropriation and distribution of public property. The travail through which the Nevada water law of this state has passed in the last forty-six years to bring order out of chaos will be of no avail if the old rule of "might makes right" in the appropriation of water is to continue. That the decisions of the Utah court relied upon by the appellant, i. e., Hammond v. Johnson, supra, and Wellsville East Field Irr. Co. v. Lindsay Land & L. Co., supra, did not receive legislative sanction is shown by the fact that in 1939 the Utah legislature amended the Utah water law so as to prevent prescriptive water rights. It is said at page 656 of 137 P.2d in the opinion in Wellsville East Field Irr. Co. v. Lindsay Land & L. Co., supra, as follows: "The Legislature in 1939 amended the law to expressly provide that non-

use by the owner of a water right for a period of five years will cause the water to revert to the State 'whether such unused or abandoned water is permitted to run to waste or is used by others without right.' By that amendment the Legislature has made it unmistakably clear that water rights cannot now be acquired by adverse user." See, also, Smith v. Sanders, Utah, 189 P. 2d 701.

This court during a period of many years has blazed a trail and marked it out with a consistent line of cases sustaining the statutory water law of this state. It has in every instance adhered to the policy that order must replace chaos in the appropriation, distribution and use of public water. The instant case brings to the court one more problem that requires solving in order that the water law can be made more effective, and become a safeguard to one of the state's most valuable assets—the public water. The problem also requires solving in order that a water right may not be destroyed or extensive and expensive litigation incurred by reason of adverse use or attempted use. Surely the simple matter of making an application to the state engineer for a permit to appropriate water or to determine the applicant's right to use the water is orderly and serves almost immediately to advise the applicant whether there is some public water to which he may acquire right.

As the 44th session of the Nevada State Legislature has now convened, we direct the attention of the legislature to the problem. We have found, in compliance with our constitutional system of assigning separate powers to the executive, legislative and judicial branches of the government, that the fixing of a policy in this matter lies more properly in the sphere of the legislature, but we do not over-step in pointing out the problem nor in submitting for consideration our thoughts upon it.

We find in the water law and the cases construing the law our answer to the remainder of our question, namely, does a user of water properly present his claim as an

owner by adverse use by filing a protest to an application to appropriate the waters claimed by the protestant? As we have stated above, the water law provides not only for a method of appropriating the unappropriated waters belonging to the state, but in addition the means for determining the relative rights of users of waters of this state. The case In re Manse Springs, supra, is the authority for the proposition that while the legislature cannot constitutionally enact laws impairing rights already in existence, it can properly, and has, in the law referred to, undertaken to provide means for ascertaining what those water rights are and to set up other methods of control. We find in section 62, being section 7947 N.C.L.1929, provision for the procedure followed by the appellant. The state engineer is not precluded from proceeding under the provisions of the water law, to ascertain and determine water rights prior to the adoption of the statutory law. Humboldt Land & Cattle Co. v. Allen, D. C., 14 F.2d 650. Nor do we see why he should be precluded from determining rights which exist by virtue of a right which came into existence prior to the enactment of the water law.

We have disagreed with the learned district judge as to the issue set out above, but we find ourselves in agreement with him respecting the other ground of demurrer. "It is a well-recognized rule of pleading that whatever is alleged in pleading must be alleged with sufficient certainty to apprise the opposite party of what he is required to meet on the trial, and the court of the issue presented." Bowers v. Charleston Hill Nat. Mines, 50 Nev. 99, 104, 251 P. 721, 256 P. 1058, 1061.

The complaint before us is uncertain in at least three respects: First, it is not set out clearly and concisely in what amounts the water was adversely used by the appellant nor upon what land it was used.

Secondly, it does not appear with any certainty whether the respondent, Dan Filippini, owned a right to use all of the waters of Duff Creek or a portion of these waters.

Thirdly, we find the right of the respondent, Dan Filippini, described as a vested right acquired by purchase; while the expression "vested right" is a commonly accepted meaning, there is not such certainty that it leaves no doubt. We think the appellant could allege so far as his information and belief permits the manner of acquisition and the dates and other pertinent facts of the original acquisition.

Finally, we are required to infer to what extent the granting of respondent Dan Filippini's application will injure the appellant, if at all. To what extent deprivation of these waters would curtail the operation of the appellant could be described with some exactness.

For the reasons given, it is ordered that the matter be remanded to the Third judicial district court of the State of Nevada in and for the county of Eureka, and the court is hereby directed to enter such orders as are necessary to make effective this holding; each party to bear his costs.

HORSEY, C. J., concurs.

BADT, J., having disqualified himself, the Governor designated Hon. TAYLOR H. WINES, Judge of the Fourth Judicial District, to sit in his place.

EATHER, Justice (dissenting).

Being unable to concur in the conclusion reached by the majority opinion with respect to the interpretation and construction of the term "appropriation," I feel it my duty to express my views in this dissenting opinion.

The majority courts holds, notwithstanding the express provisions of the water laws of this state beginning with 1905, that before a person may appropriate water for beneficial use, such person must first make application to the state engineer for permit to so appropriate, that such person may acquire a water right by prescription, that is to say, by adverse use thereof for a period of five years. It is clear from the majority opinion that the majority court bases its conclusion upon the

case of Authors v. Bryant, 22 Nev. 242, 38 P. 439, which case was decided some twenty years before the water law of 1905 was enacted.

It is clear from the majority opinion that it is thought that the legislature should establish the policy of this state with respect to the appropriation of water, and that it is also thought the legislature has not done so with respect to the paramount issue in this case.

The actual, mechanical and physical work of the appropriation of water is to construct a ditch from the stream and thus convey water on the land. The legislature has not changed the physical aspects of the appropriation of water. What the legislature has in effect done in the water laws of 1905, 1907, and 1913, is simply to provide an additional element with respect to the appropriation, and that element being to obtain a permit from the state engineer for the purpose of recording and providing documentary evidence of the appropriation of water. In brief, to bring order out of chaos. *By so doing the legislature has established a policy of this state, and that policy is that no person may divert water from a stream system by the appropriation method without first making a documentary record thereof in the office of the state engineer.* It is clear from the majority opinion that the court has viewed most favorably the theory of the respondents, and has cited with great approval the Wyoming case relied upon by respondents to sustain the proposition that a water right cannot be acquired by adverse possession. I concur most heartily with that portion of the majority opinion dealing with the theory of the respondents, and I concur with the majority court's apparent approval of such theory, as in my opinion the theory of respondents correctly presents the issue, and states the law upon the question.

It is a well-established rule of law that when a court has decided an important question and the legislature thereafter changes the law, even though not at the request of the court, and the legislative change declares

a different policy from that found to be the policy and the law in the court's decision, then that particular decision of the court is deemed to be overruled by legislative action. Such is the condition of the case of Authors v. Bryant, supra. No doubt that case correctly stated the law as it existed at that time because no legislative act had changed the nature or modified the act of the appropriation of water. Such change was so made in the water law of 1905 and continued in the water law of 1907 and that of 1913. It is my considered opinion that such legislative acts firmly establish the policy of the state to be that applications to the state engineer for permits to appropriate water must first be made before the actual physical act of such appropriation could be had, and such application must be made in every instance by any person desiring to appropriate water.

The judgment of the lower court should be affirmed.