UNITED STATES of America, Plaintiff,

v.

**ALPINE LAND & RESERVOIR COMPANY, a Corporation, Defendant,**

and

**Nevada State Engineer, Defendant–Appellee,**

**Pyramid Lake Paiute Tribe of Indians, Applicant–Appellant,**

**Truckee–Carson Irrigation District; Water Right Transfer Applicants, Applicants–Appellees.**

No. 90–16460.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 26, 1991.

Decided May 26, 1992.

As Amended Jan. 21, 1993.

Robert S. Pelcyger, Fredericks, Pelcyger & Hester, Boulder, CO, for applicant-appellant.

Margaret A. Twedt, Deputy Atty. Gen., Carson City, NV, for defendant-appellee.

Frederick G. Girard, Kronick, Moskovitz, Tiedemann & Girard, Sacramento, CA, for applicants-appellees.

Before: WALLACE, Chief Judge, WIGGINS and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

The Pyramid Lake Paiute Tribe of Indians (the "Tribe") protested the application of farmers in the Newlands Federal Reclamation Project (the "Project") to transfer water rights. The Nevada State Engineer (the "Engineer") approved the applications and the district court affirmed. We affirmed in part, reversed in part, and re-

manded in *United States v. Alpine Land & Reservoir Co.,* 878 F.2d 1217 (9th Cir. 1989).

On remand, the district court again affirmed the Engineer's approval of the application. The Tribe again appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291 and reverse and remand.

### I.

In 1980, the District Court of Nevada approved a proposed decree ("*Alpine Decree*" or "decree") submitted by a Special Master declaring the rights of all interested parties to water from the Carson River and its tributaries. *United States v. Alpine Land & Reservoir Co.,* 503 F.Supp. 877 (D.Nev.1980), *aff'd as modified,* 697 F.2d 851 (9th Cir.) ("*Alpine I*"), *cert. denied,* 464 U.S. 863, 104 S.Ct. 193, 78 L.Ed.2d 170 (1983). Once the decree became final, many Project farmers filed applications to transfer water rights appurtenant to other Project land ("transferor properties") to their land ("transferee properties").[1] While the transferor properties are not presently using their appurtenant water rights, the transferee properties are lands "lacking water rights but which long have been irrigated with Project water." *United States v. Alpine Land & Reservoir Co.,* 878 F.2d 1217, 1219 (9th Cir.1989) ("*Alpine II*").

The Tribe filed timely protests to the transfer applications in accordance with the provisions of the decree and Nevada statutes.[2] The protests were based on several grounds. Relevant to this appeal is the Tribe's claims that twenty-five of the applications involve water rights which were never perfected or were abandoned or forfeited under Nevada law.

The Engineer rejected the Tribe's protests and approved all applications. The Engineer made no specific findings regarding the transferor property water rights. Rather, the Engineer considered the issues of perfection, abandonment, and forfeiture on a Project-wide basis only. "The record of evidence," the Engineer found,

indicates that the water has been used continuously by project farmers. The fact that individual project farmers were not using the water on the *exact* acreage for which they contracted on an acre-for-acre accounting was addressed and disposed of in *Alpine [I].*

Engineer's Ruling at 14 (Sept. 30, 1985). The Engineer, relying on *Alpine I,* thus found the transferor property water rights were valid regardless of the alleged failure to perfect the water rights on the transferor property so long as water was beneficially used, albeit improperly, somewhere on Project land. Based on this Project-wide analysis, the Engineer concluded "there was [n]either intent to abandon nor intent to forsake the water or the right to use it." *Id.* at 15. The Engineer also held that the transferor water rights were not subject to Nevada's forfeiture statute because they had vested in the United States upon the creation of the Project in 1902, prior to passage of Nevada's forfeiture statute.

The Tribe, pursuant to the procedures set forth in the decree and approved by us in *Alpine I,* appealed the Engineer's decision to the district court. The district court did not discuss the merits of the Engineer's ruling on perfection, abandonment, and for-

---

1. From 1927 to 1969 the Newlands Project was operated by appellee Truckee–Carson Irrigation District. During this time, with the apparent acquiescence of TCID, transferee property landowners used Project water even though they had no contract or certificate entitling them to do so. *United States v. Alpine Land & Reservoir Co.,* 878 F.2d 1217, 1222 (9th Cir.1989).

2. The area surrounding Pyramid Lake is the aboriginal home of the Tribe and the present site of the Pyramid Lake Indian Reservation. Pyramid Lake's sole source of water is the Truckee River. Because of the diversion of

water from the Truckee River for use by Project landowners, the surface area of the Lake has decreased over the years, threatening the survival of indigenous fish species, including the cui-ui sucker and the Lahontan cutthroat trout. *Alpine II,* 878 F.2d at 1219–20. The Tribe contends that the proposed transfers violate various aspects of Nevada law and seeks to nullify these proposed transfers, claiming that the result will decrease the Project's net consumption of Truckee River water and thereby increase the water flow into Pyramid Lake. *Id.* at 1221.

feiture, finding these issues "were improperly raised before the Engineer." The district court reasoned that, under the decree, these claims should have been brought before the Water Master. The Tribe then appealed the district court's decision to this court.

In *Alpine II*, we found that the Engineer could, under the decree, "consider the Tribe's objection that the applications should be rejected due to alleged forfeiture or abandonment," *Alpine II*, 878 F.2d at 1225. We found that it was error for the district court to conclude that Nevada law is wholly irrelevant and that it is inappropriate for the Engineer to adjudicate the issues of perfection, forfeiture or abandonment, and we remanded to the district court with instructions to evaluate the Engineer's ruling on the applicability of Nevada's statutory forfeiture provisions and lack of intent to abandon. *Id.* at 1229.

We also rejected the Engineer's validation of the transferee properties' use of water. The *Alpine* decree, we stated, did "not determine[ ] whether the particular Project properties involved in this case are entitled to receive Project water." *Id.* at 1220–21. *Alpine I* did not, as the Engineer believed, recognize an informal transfer of water rights to the transferee properties or the inapplicability of Nevada's forfeiture statute. *Id.* at 1228–29. Although we stated in *Alpine I* that "historically, no distinction was made between landowners with and without limiting contracts," *Alpine I*, 697 F.2d at 856, our analysis "was premised on the contractual rights of the farmers to receive Project water in some amount, rights [the transferee property landowners] simply do not have." *Alpine II*, 878 F.2d at 1228.

On remand, the district court, without further briefing, fact finding, or a hearing on the matter, affirmed the Engineer's findings. The court quoted the Engineer's

ruling at length, including those aspects of the ruling rejected in *Alpine II*, and concluded that the Engineer's analysis was "eminently correct." The district court did not address the Tribe's claim that the water rights were not perfected. The Tribe timely filed this appeal.[3]

## II.

The Tribe protested the transfer applications on the ground that the "applications involve the transfer of alleged water rights that were never perfected in accordance with federal and state law." The Tribe argues that the district court, on remand from *Alpine II*, improperly failed to consider the Engineer's findings regarding this allegation. Appellee TCID argues that the district court had no obligation, under *Alpine II*, to consider the Tribe's perfection claim, and that the issue is, therefore, not properly before this court.[4]

## A

 On remand, the district court "must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Firth v. United States*, 554 F.2d 990, 993 (9th Cir.1977). *See also Colville Confederated Tribes v. Walton*, 752 F.2d 397, 401 (9th Cir.1985) (on remand, district court shall act in accordance with the mandate "in light of [the] opinion" (internal quotations omitted)), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986). The concluding paragraph of *Alpine II* states:

The district court's error was to conclude that Nevada law is wholly irrelevant, and that it is inappropriate for the Engineer to adjudicate the issues of *perfection, forfeiture, or abandonment*. Upon remand, the district court must evaluate the merits of the Engineer's ruling that Nevada's statutory *forfeiture* provisions

---

**3.** The Tribe also filed a motion to certify certain questions raised in this appeal to the Nevada Supreme Court. The appellants oppose the motion. Because the law of Nevada is clear, *see Alpine II*, 878 F.2d at 1226, we decline to certify the questions suggested by the Tribe. *See In re McLinn*, 744 F.2d 677, 681 (9th Cir.1984).

**4.** The Engineer concedes that the perfection issue was within the scope of the *Alpine II* remand. Appellee Engineer's Opening Brief at 2 n. 1.

do not apply and his finding that under Nevada's common law of *abandonment* the transferor landowners have not indicated an intent to abandon their water rights.

878 F.2d at 1229 (emphasis added). TCID quotes the second sentence of this paragraph in isolation to support its argument that the district court was instructed to consider the issues of forfeiture and abandonment only. We reject TCID's argument, as *Alpine II* clearly required the district court to review the Engineer's ruling regarding the perfection claim. It would make little sense to hold, in *Alpine II,* that the district court erred by failing to consider the perfection issue, remand the case, then now hold that the failure to again consider the issue was not erroneous.

A reading of *Alpine II* in its entirety also supports the Tribe's view. In *Alpine II,* we considered the Tribe's claims of lack of perfection, abandonment, and forfeiture in the context of a single issue: whether the district court erred by failing to address these claims. We held that such failure was indeed error. *Id.* at 1227–28. The mere failure to specify each of the unaddressed claims in the concluding sentence of the opinion does not excuse the district court from considering the claims on remand, as those claims are the basis for the *Alpine II* analysis and holding regarding transferability of the water rights. The subject of the litigation is the transfer of water rights within the Newlands Reclamation Project in Nevada, *id.* at 1219, and the State Engineer has no right to transfer water rights which have never been put to beneficial use. "[A]n appropriator obtains a transferable water right only to the extent that he has put his appropriation to a beneficial use." *Id.* at 1226 (quoting *Basin Elec. Coop. v. State Bd. of Control,* 578 P.2d 557, 563–64 (Wyo.1978)). In *Alpine I,* we reviewed the legislative history of the 1902 Reclamation Act. We found that under Section 8 of the Act "appropriated water must be applied to irrigation; it cannot be severed as a commodity for use on land to which it would not be appurtenant." *Alpine I,* 697 F.2d at 858. Representative Mandell described a water right under the

Act as only extending " 'to the use of the water on and for the tract originally irrigated'; there is no general 'property in water with power to sell and dispose of the same elsewhere and for other purposes than originally intended.' " *Id.* (quoting 35 Cong.Rec. 6679 (1902)).

The issue of perfection was specifically before the district court on remand and the district court's failure to address this issue was erroneous.

**B**

The Engineer argues that the district court's failure to consider the lack of perfection claim on remand is harmless because, under Nevada law, a water right need not be perfected in order to be transferred.

▇ Nevada water law is "special in character, and the provisions of such law not only lay down the method of procedure but strictly limits it to that provided." *Application of Filippini,* 66 Nev. 17, 202 P.2d 535, 540 (1949). *See also United States v. Cappaert,* 508 F.2d 313, 319 (9th Cir.1974) (Nevada water rights may only be acquired as provided by statute), *aff'd,* 426 U.S. 128, 96 S.Ct. 2062, 48 L.Ed.2d 523 (1976); Nevada Revised Statutes (NRS) 533.040 (water rights may be transferred "in the manner provided in this chapter, and not otherwise"). The statutes setting forth the procedure for transferring water rights in Nevada refer to "chang[ing] the place of diversion, manner of use or place of use of *water already appropriated.*" NRS 533.325 (emphasis added); *see also* NRS 533.345, 533.425. The Engineer concedes that this issue depends upon the interpretation of "water already appropriated" and argues the phrase "means all rights to the use of water, including inchoate rights such as permits where the water has not yet been put to beneficial use." Engineer's Supplemental Brief at 4. The Tribe asserts that appropriation is synonymous with perfection, which requires the actual application of the water to beneficial use on the property. *See Nevada v. United States,* 463 U.S. 110, 126, 103 S.Ct. 2906, 2916, 77 L.Ed.2d 509 (1983) ("[t]he law of

Nevada, in common with most other Western States, requires for the perfection of a water right for agricultural purposes that the water must be beneficially used by actual application on the land"); *Alpine I*, 503 F.Supp. at 885 (the nature of a water right is such that it takes time to perfect the right; when any work is necessary to complete the appropriation, the law gives a claimant a reasonable time to do it, and the appropriation is not deemed complete until the actual diversion or use of water).

■ In *In re Manse Spring*, 60 Nev. 280, 108 P.2d 311 (1940), the Nevada Supreme Court stated: "To constitute a valid appropriation of water, there must be an actual diversion of it, with intent to apply to beneficial use, followed by an application to such use in a reasonable time." *Id.* 108 P.2d at 314 (quoting *Walsh v. Wallace*, 26 Nev. 299, 67 P. 914 (1902));[5] *see also* NRS 533.035 ("[b]eneficial use shall be the basis, the measure and the limit of the right to the use of water"), NRS 533.070 (the quantity of water that may be appropriated "shall be limited to such water as shall reasonably be required for the beneficial use to be served"). The definition of appropriation in *Manse Spring* is consistent with the plain meaning[6] of the phrase in western water law. *See* 1 Robert E. Clark, *Waters and Water Rights* § 19.2 (1967) (appropriation requires "reasonable beneficial use"); 1 Wells A. Hutchins, *Water Rights Laws in the Nineteen Western States*, 157 (1971) (appropriation "contemplates the acquisition of rights to the use of water by diverting water and applying it to reasonable beneficial use for a beneficial purpose"); Tarlock, *Law of Water Rights and Resources*, §§ 5.15, 5.16 (1990) (physical diversion and beneficial use are essen-

tial elements of a valid appropriation); *Black's Law* Dictionary 93 (5th ed. 1979) (appropriation of water "consists in the capture, impounding, or diversion of it ... and its actual application to some beneficial use").

■ The Engineer provides no authority for its broad interpretation of "water already appropriated" and our research reveals none. In *Alpine II* we accepted the Tribe's argument that the law of Nevada requires that for the perfection of a water right for agricultural purposes the water must be beneficially used by actual application on the land, and that the only transferable water right is one that has been appropriated to a beneficial use. *See Alpine II*, 878 F.2d at 1226. We fully explored this issue in *Alpine II*, and we will not revisit it here.

■ The Engineer also relies on NRS 533.370(3), which describes certain circumstances under which the Engineer is required to reject the application.[7] The failure to beneficially use the water is not among the listed circumstances and, the Engineer argues, "[o]nly the factors of section 533.370(3) preclude the State Engineer from granting a transfer application when a water right exists." This section, however, does not provide the sole criterion for rejecting applications. *See Alpine II*, 878 F.2d at 1227 (citing NRS 533.070, 533.040). In addition, we do not find this statute and the requirement of beneficial use inconsistent. We read NRS 533.370(3) as providing criteria for rejecting applications to transfer rights to water which is "already appropriated." An application to transfer rights to water *not* already appropriated—i.e., not beneficially used on the transfer proper-

---

5. In cases where beneficial use may be made of the water without diverting it, beneficial use alone is sufficient to constitute appropriation. *Nevada v. Morros*, 104 Nev. 709, 766 P.2d 263, 267 (1988) ("Nevada water law recognizes and permits water appropriation *in situ*, without a diversion, for public recreation purposes").

6. Under Nevada law, "words should be given their plain meaning unless this violates the spirit of the act." *Application of Filippini*, 66 Nev. 17, 202 P.2d 535, 538 (1949).

7. NRS 533.370(3) provides in pertinent part:

Where there is no unappropriated water in the proposed source of supply, or where its proposed use or change conflicts with existing rights, or threatens to prove detrimental to the public interest, the state engineer shall reject the application and refuse to issue the permit asked for.

ty—would not constitute a proper application and therefore be ineligible for consideration under this section.

■ Under Nevada law, the appropriation of water requires, at a minimum, the actual application of the water on the transferor property to beneficial use. Because Nevada's statutory procedure for transferring water rights requires the prior appropriation of the water, the district court's failure to consider this issue on remand was not harmless.

### C

Merely addressing the Engineer's ruling regarding the Tribe's claim of lack of perfection would be insufficient; the correct law must also be applied. The Engineer's Project-wide analysis of beneficial use was rejected in *Alpine II*. Without this "informal transfer" theory, there is no basis, in the absence of further fact finding, for concluding the transferee properties have rights to water. *Alpine II*, 878 F.2d at 1228–29. On remand, the fact finder must determine whether the specific water rights sought to be transferred are rights to "water already appropriated" as we have construed this phrase.

### III.

The parties agree that Nevada's common law of abandonment applies to this case. The Tribe argues that the Engineer and the district court based their abandonment findings on an incorrect legal standard. The appellees, though conceding that the basis for the Engineer's finding was incorrect, argue that substantial evidence supports his finding.

■ Abandonment of a water right "is the relinquishment of the right by the owner with the intention to forsake and desert it." *Manse Spring*, 108 P.2d at 315 (quoting 2 *Kinney on Irrigation and Water Rights* § 1118 at 2020 (2d ed.)). The issue of abandonment is "a question of fact

to be determined from all the surrounding circumstances." *Revert v. Ray*, 95 Nev. 782, 603 P.2d 262, 264 (1979). Nonuse of water by the owner of a water right is some evidence of an intent to abandon the right. *Franktown Creek Irrigation Co. v. Marlette Lake Co.*, 77 Nev. 348, 364 P.2d 1069, 1072 (1961); *Manse Spring*, 108 P.2d at 316.[8]

■ The decree provides that the decision of the Engineer "shall be prima facie correct, and the burden of proof shall be upon the party challenging the Engineer's decision." *Alpine Decree*, Administrative Provisions ¶ 7; *see also* NRS 533.450(9) (same). We review the Engineer's findings on abandonment for an abuse of discretion. *State Engineer v. Curtis Park Manor Water Users Ass'n*, 101 Nev. 30, 692 P.2d 495, 497 (Nev.1985); *Revert*, 603 P.2d at 264, 265.

The Engineer found that the use of water "by Project farmers" was sufficient to find the absence of intent to abandon the water rights appurtenant to the transferor properties. Relying on our decision in *Alpine I*, the Engineer apparently believed "that this court has accepted the *de facto* transfer of water rights to Project properties lacking water rights." *Alpine II*, 878 F.2d at 1228. We expressly rejected this reasoning in *Alpine II*, stating that *Alpine I* "in no way approved the so-called 'informal transfer' of water rights." *Id.* "The critical defect with the transferee properties," we stated, "is that they generally have no right to receive Project water. The landowners do not hold contracts or certificates entitling [the transferee] properties to be irrigated." *Id.* at 1229. The proper inquiry for the Engineer and the district court, therefore, is whether the individual transferor water rights were abandoned by the transferor property owners. Because the Engineer did not apply the correct law in determining intent, he has abused his discretion. For the same rea-

---

**8.** The Tribe, relying on authority from other western states, argues that a substantial period of nonuse creates a rebuttable presumption of abandonment. Though the longer the period of nonuse, the greater the likelihood of abandonment, we find no support for a rebuttable presumption under Nevada law.

son, the district court's approval of the Engineer's findings is erroneous.

The Engineer argues that there is substantial evidence to support his findings when the correct analysis is applied. We, however, are not in a position to evaluate facts not considered or found below. The Engineer's argument only illustrates the need for further determinations by a proper fact finder.

### IV.

■■■■■■ We next consider the applicability of the Nevada statute providing for the forfeiture of water rights. The only requirement to prove forfeiture of water rights is to show a failure to use the water beneficially for five successive years. *See* NRS 533.060(2). Forfeiture thus differs from common law abandonment because an intent to relinquish a right is not required for forfeiture. *Manse Spring*, 108 P.2d at 315. Under Nevada law, however, the forfeiture statute does not apply to water rights that vested before March 22, 1913, when the statute took effect. *See* NRS 533.085 [9]; *Manse Spring*, 108 P.2d at 316.

The Engineer found that the forfeiture statute did not apply to the transferor property water rights because "[t]he existing Newlands water rights that are the subject of the change applications were vested in the name of the United States when Congress authorized Lahontan Dam in 1902." Engineer's Ruling at 14.

The district court affirmed the Engineer's approval of the transfer applications, but not because it agreed that Nevada law made the forfeiture statute inapplicable. Instead, the district court adopted an alternative rationale that Nevada law generally did not apply.

We rejected this theory in *Alpine II* and determined that Nevada law does apply to the proposed transfers. We instructed the district court to "evaluate the merits of the Engineer's ruling that Nevada's statutory forfeiture provisions do not apply." *Alpine II*, 878 F.2d at 1229. On remand, the district court found that the Engineer's conclusion that the Nevada statutory forfeiture provisions were inapplicable was "eminently correct" because, the district court found, the rights vested in 1902.

■■■■ The district court erred by assuming that all the water rights in question vested when the United States obtained water rights for the Project in 1902.[10] This amalgamation of water rights, obtained by the United States for the entire Project, is not the relevant set of rights. Instead, the rights at issue are the rights appurtenant to particular tracts of land that are the subject of the twenty-five contested transfer applications.

■■■■■■ Determining when those rights vested is a matter of Nevada law. Vested water rights are those that have "become fixed either by actual diversion and application to beneficial use or by appropriation, according to the manner provided by the water law, and [are] regarded and protected as property." *Filippini*, 202 P.2d at 537. A water right may vest upon diversion and beneficial use, by permit "procured pursuant to the statutory water law relative to appropriation," or by "an actual diversion ... with intent to apply it to a beneficial use, followed by an application to such use within a reasonable time." *Id.* at 537–38 (internal quotations omitted).

The individual water rights at issue here were delivered by contract by the United States from its accumulated water rights in

---

**9.** Section 533.085 provides in pertinent part: Nothing contained in this chapter shall impair the vested right of any person to the use of water, nor shall the right of any person to take and use water be impaired or affected by any of the provisions of this chapter where appropriations have been initiated in accordance with law prior to March 22, 1913.

**10.** "In the early stages of the Newlands Project the United States acquired by contract the vest-

ed water rights to 29,884 acres of land with priority dates from 1865 to 1902. These rights were conveyed to the United States by private land owners in exchange for the government's promise to deliver Project water to these farms." *Alpine I*, 503 F.Supp. at 881. In addition to these conveyances, Congress authorized the withdrawal of over 200,000 acres from public lands to create the Project.

the Project to the transferor landowners. For the reasons discussed above, the rights could become vested in the individual landowners only upon becoming appurtenant to a particular tract of land.

■ According to the Nevada Supreme Court, the Nevada legislature included the provision exempting pre–1913 rights from impairment "to refrain from infringing upon rights which had accrued at that time, so as to avoid any question of the constitutionality of the act." *Manse Spring*, 108 P.2d at 315.

> Prior to 1913 the law said that the water users of that day would have and hold the use of such water until the same should be abandoned, and, as we have seen, in abandonment the intent of the water user is controlling. To substitute and enlarge upon that by saying that the water user shall lose the water by failure to use it for a period of five years, irrespective of the intent, certainly takes away much of the stability and security of the right to the continued use of such water.

*Id.* at 316. In other words, a water right that can be lost through mere non-use is something less than a water right that may be lost only through intentional abandonment. The Nevada legislature did not want to diminish the pre–1913 rights.

The rights acquired by the farmers in the Project from the United States were more akin to newly appropriated water rights than to the rights such as those in *Manse Spring* that had remained appurtenant to a particular tract of land and had been passed with the land. In obtaining water rights from the United States, the Project farmers were really in the same position as farmers appropriating water from its source. Accordingly, with the purpose of the statute in mind, it would not make sense to grant to every farmer a Project water right with a 1902 vesting date regardless of when the farmer actually obtained the right to irrigate his land.

As there has been no factfinding regarding the individual water rights, we do not know at this time whether any of the water rights sought to be transferred were origi-

nally granted to the transferors by the United States prior to 1913 and further do not know if the water was beneficially applied.

Our conclusion that the individual rights at issue here did not vest in 1902 when the United States obtained Project-wide rights is not in conflict with our earlier decisions. The Engineer argues that this court has already held that the farmers' rights vested in 1902. In *Alpine I*, we stated:

> The district judge found that under the Nevada "relation back" doctrine, the 1903 statute did not affect the Project farmers' rights which had vested in 1902. We do not find this decision of the district court on the law of its own state incorrect.

697 F.2d at 855. We were considering the question of whether a 1903 Nevada statute limiting the quantity of water that could be diverted per acre of irrigated land could limit the water duties for Project farmlands. In the district court, the parties had *stipulated* for the purposes of that question that the priority date of the Newlands irrigation rights was July 2, 1902. *See* 503 F.Supp. at 885. Thus the issue of the date of vesting was not before the court; the issue was whether the statute could limit the duties *assuming* a priority date of 1902.

On remand, in order to determine whether a water right may have been forfeited, it first must be determined whether and when the right vested, and under which law appropriation was initiated. If the right vested before March 22, 1913, or if the appropriation of the right was initiated in accordance with the law in effect prior to that date, then it is not subject to possible forfeiture under NRS 533.060.

## V.

■ The district court erred by failing to consider the Tribe's claim that the water rights were never perfected and by approving the Engineer's findings on abandonment and forfeiture. In accordance with

this opinion and the decision in *Alpine II*,[11] we remand for determination of whether: (1) the water rights appurtenant to the transferor properties at issue have been perfected; (2) the holders of the water rights sought to be transferred abandoned the water rights appurtenant to the transferor properties; and (3) the specific water rights sought to be transferred have been forfeited if the specific water rights vested after March 22, 1913.

REVERSED AND REMANDED.

---

**11.** The issues of perfection, abandonment, and forfeiture in this case can properly be determined by either the Engineer or a federal Water Master appointed by the district court. *Alpine II*, 878 F.2d at 1225. In *Alpine II*, we stated, "following remand, the district court is free either to refer this matter to the Water Master, or to rule on it in the first instance." *Id.* at 1228 n. 15. We again leave to the district court's discretion the decision of the appropriate fact-finder.