Concepcion S. **Wabol** and
the Estate of Elias S. Wabol,
Plaintiffs/Appellees,
**v.**
Victorina U. **Villacrusis**,
Philippine Goods, Inc., and
Transamerica (Saipan), Corp.,
Defendants/Appellants.
Appeal Nos. 94-014 & 94-020
Civil Action No. 84-0397
December 19, 1995

[39] *Id.* at 6-7.

[40] *Id.*

Argued and Submitted July 6, 1995

Counsel for appellants Villacrusis and Philippine Goods, Inc.: Douglas F. Cushnie & Robert W. Jones, Saipan.

Counsel for appellant Transamerica (Saipan), Corp.: Eric S. Smith, Saipan.

Counsel for appellees: Theodore R. Mitchell & Jeanne H. Rayphand, Saipan.

BEFORE: VILLAGOMEZ and ATALIG, Justices, and LAMORENA, Special Judge.

ATALIG, Justice:

Appellants Victorino U. Villacrusis ("Villacrusis"), Philippine Goods, Inc. ("PGI"), and Transamerica (Saipan), Corp. ("Transamerica"), appeal from an April 19, 1994, judgment of the trial court, issued on remand. This Court has jurisdiction pursuant to 1 CMC § 3102(a). We hold that the trial court failed to follow our mandate and the dictates of the remanding Appellate Division of the U.S. District Court for the Commonwealth of the Northern Mariana Islands ("Appellate Division") decision. Hence, we vacate the trial court judgment and remand this matter for further proceedings.

## ISSUE PRESENTED AND STANDARD OF REVIEW

The dispositive issue on appeal is whether or not the trial court's judgment violates the mandate of this Court. This is a question of law, reviewable de novo. *Loren v. E'Saipan Motors, Inc.*, 1 N.M.I. 133, 136 (1990).

## FACTUAL AND PROCEDURAL BACKGROUND

On August 1, 1985, the trial court determined that a lease between PGI and Filomenia W. Muna, a sister of appellee Concepcion S. Wabol ("Wabol"), for a term of thirty years with an option to extend the lease term in PGI, the lessee, for twenty years, violated N.M.I. Const. art. XII ("Article XII"). However, in light of the undisputed facts that PGI and Transamerica had been paying rent and had placed extensive improvements on the property (located on Saipan), the court employed an equitable solution, partially granting and denying the cross-motions for summary judgment and declaring void ab initio only the ten-year portion in excess of the then-permissible forty years. *See Wabol v. Muna*, 2 CR 231, 236-37, 252-54 (N.M.I. Trial Ct. 1984). Wabol and the estate of Elias S. Wabol (collectively "appellees") appealed from this decision to the Appellate Division.

On February 2, 1987, the Appellate Division reversed the trial court decision in part. It concluded that N.M.I. Const. art. XII, § 6 proscribed the reformation of a lease that violates Article XII and held that the entire lease was void. The Appellate Division remanded the matter to the trial court

to determine the terms and conditions of any obligations which may have arisen in quasi contract or as a result of a periodic tenancy. Additionally, the appellees have made several improvements on the land . . . [and that] [o]n remand, the court should determine the amount, if any, of payment appellees should receive enrichment for those additions.

*Wabol v. Muna*, 2 CR 963, 981 (D.N.M.I. App. Div. 1987).

PGI appealed from this decision to the Ninth Circuit Court of Appeals. That court affirmed "in all respects" the Appellate Division decision and remanded the matter "for further proceedings." *Wabol v. Villacrusis*, 958 F.2d 1450, 1463 (9th Cir. 1990). The Ninth Circuit decision was appealed; the U.S. Supreme Court denied certiorari on December 7, 1992. *Philippine Goods, Inc. v. Wabol*, 506 U.S. 1027, 113 S. Ct. 675, 121 L. Ed. 2d 598 (1992).

This Court received the mandate from the Ninth Circuit on April 4, 1994. On the same date we issued our mandate to the trial court advising it that the Ninth Circuit affirmed the Appellate Division decision.[1]

After receipt of our mandate, the trial court entertained an ex parte motion for judgment filed by Wabol. On April 19, 1994, without a hearing, the court issued a judgment on remand, stating, in pertinent part:

> THIS COURT having received the mandate of the Supreme Court of the Commonwealth of the Northern Mariana Islands, which mandate was issued on the 4th day of April, 1994,
> IT IS HEREBY ADJUDGED AND DECREED THAT the plaintiffs shall have judgment against the defendants; it is hereby declared that the lease of August 18, 1978 is void *ab initio* and

the plaintiffs to be entitled to exclusive possession of Lots 1897 B-3 and B-4.

*Wabol v. Villacrusis*, Civ. No. 84-0397 (N.M.I. Super. Ct. Apr. 19, 1994) (judgment).

The appellants timely appealed from this judgment and moved the trial court for a stay of its execution pending appeal. The appellees cross-moved for a writ of possession based on the judgment. The matter was heard on May 18, 1994, and on May 26, 1994, the trial court issued an order denying the motion to stay and granting the motion for a writ of possession in the appellees. This writ was issued to Wabol on June 3, 1994. On June 13, 1994, this Court denied the appellants' motion for a stay of the execution of the judgment pending appeal.

## ANALYSIS

The appellants argue that the trial court judgment violates the mandate of this Court because the court failed to follow the dictates of the Appellate Division decision and determine on remand either whether any quasi-contractual or periodic-tenancy obligations arose or the amount, if any, that they should receive from the appellees in order to prevent unjust enrichment for improvements upon the disputed property. As such, they contend that the judgment should be vacated and the matter remanded for proceedings consistent with the Appellate Division decision. Furthermore, the appellants argue that this Court should remand with instructions to apply the statutory remedies mandated in PL 8-32 (enacted Oct. 29, 1993; codified at 2 CMC § 4941 et seq.).[2]

The appellees counter that the judgment carries into effect the mandate of this Court because the Appellate Division's remanding instructions "as to restitution [are] permissive, not mandatory." Appellees' Brief at 12. They also argue that PL 8-32 is unconstitutional in that: (1) it "is an encroachment on the judicial function of the courts," *id.* at 17, and (2) it contravenes, and was designed to repeal, Article XII, *id.* at 19-23.[3]

---

[1] WHEREAS, the mandate from the Ninth Circuit, affirming the decision of the Appellate Division of the District Court, was received by this Court on April 4, 1994; and
WHEREAS, this Court has jurisdiction to issue the mandate to the Superior Court and the Appellate Division no longer had jurisdiction in this matter;
*THEREFORE, this MANDATE is issued* to the Superior Court, *advising the Superior Court that the decision of the Appellate Division*, which reversed the decision of the trial court, *has been affirmed by the Ninth Circuit.*

*Wabol v. Villacrusis*, App. No. 89-005 (N.M.I. Sup. Ct. Apr. 4, 1994) (mandate) (emphasis added).

---

[2] They also argue that the writ of possession issued by the court should be vacated as it was premised on the April 19, 1994, judgment. However, the possession of the property has no relationship to the issues of restitution and unjust enrichment as argued by the appellants.

[3] They further argue that the judgment of the court is not appealable because: (1) the final judgment in the matter is the denial of certification by the U.S. Supreme Court on July 7, 1992; and (2) the judgment did not adjudicate anything. This

We conclude that the trial court failed to follow our mandate and the dictates of the Appellate Division decision. On remand, it was incumbent upon the trial court to conduct further proceedings consistent with the remand instructions. This was not done. Further, we conclude that we should afford the trial court the opportunity to first address the issue of the applicability, and, if necessary, constitutionality, of PL 8-32.

## I. Trial Court Failed to Follow Mandate

■ The arguments on appeal implicate the interrelated doctrines of rule of mandate and law of the case. "On remand, the . . . court 'must proceed in accordance with the mandate and such law of the case as was established by the appellate court.'" *United States v. Alpine Land & Reservoir Co.*, 983 F.2d 1487, 1491 (9th Cir. 1992) (citations omitted); *see also In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255, 16 S. Ct. 291, 293, 40 L. Ed. 414 (1895) (lower court "is bound by the decree as the law of the case, and must carry it into execution according to the mandate"). We conclude that the trial court failed to comply with either doctrine.

### A. Rule of Mandate

■ Specific to the rule of mandate, the lower court, upon receiving the mandate of an appellate court, is under a duty "to [strictly] comply with the mandate . . . and *to obey the directions therein without variation.*" *Loren*, 1 N.M.I. at 137 (citation omitted);[4] *see also Sanford*, 160 U. S. at 256, 16 S. Ct. at 293, 40 L. Ed. 414. Actions of the lower court not in conformity with the directions are "'void.'" *See Loren*, 1 N.M.I. at 138

(citation omitted). This is true "*even though the mandate may be erroneous.*" *Id.* at 137-38 (citation omitted).[5]

■ The appellees argue that the language of the Appellate Division remand instructions is permissive and not mandatory. This argument is without merit. The first portion of the instructions is clearly mandatory. The Appellate Division specifically remanded the matter for proceedings on any obligations which may have arisen under either quasi contract or periodic tenancy. *See supra*, factual and procedural background.

The second portion of the instructions, regarding unjust enrichment, employs the term "should." While jurisdictions differ as to the nature, permissive or mandatory, of this term,[6] these differences are prompted by the context within which the term is used.

Here, in light of the circumstances, both the initial trial court and Appellate Division decisions were concerned with any inequities which would arise as a result of the entire lease simply being voided. This is highlighted by the Appellate Division's mention, in its remand instructions, of the improvements made upon the property by the appellants, and that consideration of such on remand should be effected "in order to prevent unjust enrichment." See source quoted *supra*, factual and procedural background. We read this instruction as imparting an obligation upon the trial court to afford the parties the opportunity to address the issue of unjust enrichment on remand. This is in addition to the mandatory language concerning the determination of any quasi-contractual or periodic-tenancy obligations.

■ Instead, the trial court, upon an ex parte request for judgment and without a hearing, issued the disputed

---

argument is without merit in light of the issues raised on appeal with respect to the rules of mandate and law of the case.

[4] In *Loren*, the Appellate Division reversed, holding a contract enforceable, and remanded with specific instructions to determine damages and fees. *See Loren v. E'Saipan Motors, Inc.*, 3 CR 564, 576-78 (D.N.M.I. App. Div. 1988). That court then issued a mandate which stated that "[t]he appeal in the above matter is hereby ordered and adjudged reversed and remanded." *Loren*, App. No. 87-9019 (D.N.M.I. App. Div. Dec. 7, 1988) (mandate). On remand, the trial court concluded that the contract was still unenforceable on a ground raised initially but not specifically appealed. *See Loren v. E'Saipan Motors, Inc.*, 1 N.M.I. 133, 135-36 (1990). This Court concluded that the Appellate Division's mandate was violated by the trial court's failure to follow the specific remand instructions. *Id.* at 136-38.

[5] Only those matters left open by the mandate may be reviewed on remand. *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256, 16 S. Ct. 291, 293, 40 L. Ed. 414 (1895). While an order issued after remand may, in some instances, diverge from the appellate court's mandate, it must be consistent with the "spirit" of the appellate decision and within the scope of the remand. *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1404 (9th Cir.) (determination regarding damages on remand not an abuse of discretion). *cert. denied*, ___ U.S. ___, 114 S. Ct. 64, 126 L. Ed. 2d 34 (1993).

[6] While the term "should" is not always a mandatory term, compare AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1199 (1981) (term "should" may indicate conditional form of term "shall") with *Aquino v. Tinian Cockfighting Bd.*, 3 N.M.I. 284, 292 (1993) (statutory term "shall" creates duty and is mandatory). it does "ordinarily imply a duty or obligation." BLACK'S LAW DICTIONARY 1379 (6th ed. 1990).

judgment,[7] compare *Alpine Land*, 983 F.2d at 1491-92 (reversing and remanding to district court which, after prior remand, again affirmed decision "without further briefing, fact finding, or a hearing" on issues placed squarely before district court by the Ninth Circuit), thereby foreclosing any discussion on the issues specifically addressed in the Appellate Division's remand instructions.

## B. *Law of the Case Doctrine*

■ Under the narrower law of the case doctrine, courts are generally required to follow legal decisions of the same or a higher court in the same case. *See generally Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993) ("'The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case'") (citation omitted).[8] This is true even where the court on remand disagrees with or finds error in the remanding court's decision. *Sanford*, 160 U. S. at 255, 16 S. Ct. at 293, 40 L. Ed. 414 (*cited in United States v. Jacobs*, 955 F.2d 7, 9 (2d Cir. 1992)).

■ The policy underlying this doctrine is one of finality of court decisions. *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 834-35 (9th Cir. 1982) (analogizing law of the case principles to those of res judicata); *see also Camacho v. J.C. Tenorio Enters., Inc.*, 2 N.M.I. 407, 413-14 (1992) ("Law of the case principles . . . are a matter of practice that rests on good sense and the desire to protect both court and parties against the burdens of repeated reargument by indefatigable diehards"). Further, the law of the case doctrine applies to issues either explicitly or implicitly decided by the previous court, *Alberti v. Klevenhagen*, 46 F.3d 1347, 1351 n.1 (5th Cir. 1995); *Herrington*, 12 F.3d at 904, and we afford Appellate Division decisions in the same case the deference we would afford a prior decision of this Court. *See Vaughn v. Bank of Guam*, 1 N.M.I. 160, 165 (1990) ("This Court cannot sit in review of the Appellate Division's judgment"); *Camacho*, 2 N.M.I. at 413 (applying federal law of the case doctrine to prior Appellate Division decision).

■ The appellees argue that the Appellate Division improperly addressed the unjust enrichment issue on appeal, an issue which had not been raised by the appellants in their initial answers to the complaint. However, it is not for this Court to question, absent reasons mandating an exception to the law of the case doctrine,[9] the propriety of the Appellate Division decision. Rather, had the appellees disagreed with the remand instructions, they should have moved for a rehearing or reconsideration of the decision or cross-appealed the issue to the Ninth Circuit Court of Appeals. *Cf. Loren*, 1 N.M.I. at 138.

■ Furthermore, while the trial court observed, to an extent, the law of the case doctrine, in that it deemed the lease to be void ab initio, it failed to fully comply with that doctrine. In its order of May 26, 1994, the trial court noted that it received the mandate to follow the Appellate Division decision but declined to address the issue of restitution because the appellants had not initially raised it as a counterclaim in their original answer.[10]

---

[7] We note that the record is devoid of the "need for swift action [via an ex parte] proceeding without notice." Without notice and a need for such swift action, there is an abrogation of one's due process rights. *See* RESTATEMENT (SECOND) OF JUDGMENTS [hereinafter JUDGMENTS] § 2 cmt. h (1982).

[8] *But see Wabol v. Villacrusis*, 4 N.M.I. Appendix (1994) (order of dismissal) (Villagomez, J., concurring) (agreeing that mandate with directions to dismiss must be executed but questioning remanding appellate court's legal analysis and jurisdiction) *and compare with Olopai v. Hillblom*, 3 N.M.I. 528, 530-31 (1993) (noting allusion by trial court that this Court lacks appellate jurisdiction and stating that "whether we have jurisdiction to entertain an appeal is one we must determine ourselves").

[9] The exceptions to the law of the case doctrine under which we will revisit a prior determination in the same case, see *Camacho v. J.C. Tenorio Enters., Inc.*, 2 N.M.I. 407, 413 (1992) (applying federal law of the case doctrine to prior Appellate Division decision), are not implicated by the record before us.

[10] This court has received a mandate, issued by the Supreme Court of the Commonwealth of the Northern Mariana Islands on April 4, 1994, directing this court to carry the decision of the Appellate Division into effect, as affirmed by the United States Court of Appeals for the Ninth Circuit, into effect [sic]

. . . .

Because defendant Transamerica has not filed any claim in this action for restitution, in the form of a counterclaim or in any other form and as a consequence, the Court is now powerless to entertain or adjudicate with respect to any such nonexistent claim;

. . . .

Because Defendants Villacrusis and Philippine Goods have not filed any counterclaim seeking restitution, the Court is now powerless to entertain or adjudicate any such claim.

Hence, it is clear that the trial court was aware of the unjust enrichment issue but that it disagreed with the Appellate Division and refused to follow the mandate.[11] This is in direct contravention of the law of the case doctrine. It was not for the trial court to pass judgment on and disregard the decision of the Appellate Division. Rather, the trial court had a duty to comply with the decision remanded by the mandate, regardless of its perception of the propriety of the decision.

## II. Applicability and Constitutionality of PL 8-32 Best Resolved by Trial Court in First Instance

The appellees urge this Court to conclude that PL 8-32 is unconstitutional. However, the constitutional issues now raised by the appellees for the first time are best resolved in the first instance by the trial court and not this Court on appeal.

■■■ We will neither unnecessarily resolve constitutional issues, see *In re Estate of Tudela*, 4 N.M.I. 1, 5 (1993) (this Court will not resolve constitutional issues unnecessarily), *appeal dismissed*, 43 F.3d 1479 (9th Cir. 1994), nor deprive the trial court of an opportunity to first evaluate the applicability and constitutionality of a statute. *See id.* (declining to determine constitutional issue dependant upon unresolved factual findings); *Mafnas v. Hefner*, 1 N.M.I. 22, 31 (1989) (declining to entertain issue going to constitutional authority of judge to preside at court, in part because "the Superior Court properly should have the first opportunity to entertain the case").[12]

## CONCLUSION

Based on the foregoing, we hereby **VACATE** the trial court's April 19, 1994, judgment and **REMAND** this matter for proceedings consistent with our mandate and the Appellate Division decision.

Specifically, on remand the court is to determine whether any quasi-contractual or periodic-tenancy obligations have arisen on the part of Concepcion S. Wabol or the estate of Elias S. Wabol, and the amount, if any, of any unjust enrichment incurred as a result of improvements made on the property by the appellants. Further, on remand the court shall entertain the applicability of PL 8-32 to this matter as well as any other equitable considerations raised by the parties. These considerations on remand must be entertained prior to the entry of judgment.

---

VILLAGOMEZ, Justice, dissenting:

### I

This case, filed eleven years ago, is the oldest case pending in the Commonwealth courts. It originated in the Commonwealth Trial Court, which was renamed "Superior Court" in 1989. It was appealed to the Appellate Division of the U.S. District Court ("Appellate Division"),[13] which was replaced by the Commonwealth Supreme Court, also in 1989. It was then appealed to the Ninth Circuit Court of Appeals[14] and, finally, to the U.S. Supreme Court.

The case was erroneously remanded back to the Superior Court through the Appellate Division, after the Appellate Division had lost jurisdiction due to the establishment of the Commonwealth Supreme Court. At our request, the Ninth Circuit rerouted the remand order through the Commonwealth Supreme Court and, through our mandate, the Superior Court regained proper jurisdiction.

After receiving the mandate from us, the Superior Court entered judgment and issued a writ of possession in favor of Wabol. This appeal followed. Transamerica has vacated the subject land, which has remained idle for over a year.

Appellants Philippine Goods and Transamerica[15] assert that the Superior Court should have entertained the

---

Order on Defendants' Motions for Stay Pending Appeal and Plaintiffs' Motion for Writ of Possession, *Wabol v. Villacrusis*, Civ. No. 84-0397 (N.M.I. Super. Ct. May 26, 1994).

[11] There was no mention in the trial court's May 26, 1994, order of the Appellate Division's directions with respect to the quasi-contractual and periodic-tenancy issues.

[12] "While the issues raised and the relief sought may be difficult and sensitive, they do not by themselves rise to a level where we should permit the by-passing of a lower court's ordinary trial functions." *Mafnas v. Hefner*, 1 N.M.I. 22, 30 (1989).

---

[13] *See Wabol v. Muna*, 2 CR 963 (D.N.M.I. App. Div. 1987).

[14] *See Wabol v. Villacrusis*, 958 F.2d 1450 (9th Cir. 1990) (affirming the Appellate Division in all respects and remanding for further proceedings).

[15] The appellants hereafter will be referred to collectively as "Transamerica," except when one is referred to individually. Transamerica, the sublessee of Philippine Goods, occupied the land prior to the return of the property to Wabol.

issue of unjust enrichment prior to entering its judgment on remand.

## II

We are asked to determine first, whether the Superior Court erred by denying Transamerica's request for a hearing and consideration of the issue of restitution pursuant to the opinion of the Appellate Division. Second, we are asked to consider whether the Superior Court should have applied the statutory remedies contained in PL 8-32.[16]

## III

Transamerica's request for a hearing on the issue of unjust enrichment was not based on the pleadings or the record before the Trial Court. The parties originally submitted their arguments to the Trial Court in a summary judgment proceeding. There was no issue of fact in dispute and the Trial Court entered judgment in favor of Philippine Goods, noting that improvements on the land had been made by Transamerica. On appeal to the Appellate Division, the issue of restitution was neither raised nor argued. However, that court noted that the appellees had made improvements on the land, and stated that "[o]n remand, the court *should* determine the amount, if any, of payment [the] appellees should receive from the appellants in order to prevent unjust enrichment for those additions."[17]

Transamerica never asked for restitution during the eleven-year pendency of this action. Instead, the record shows that it executed a new lease with Wabol, contemplating that, if Philippine Goods did not prevail on appeal, the new lease would replace the old lease and Transamerica would remain in possession of the land as a lessee.

The record shows that a lump-sum rental payment on the new lease was to have been made at a time subsequent to the lease's execution. When Transamerica eventually tendered the rent, Wabol refused to accept it, thus preventing the new lease from going into effect. As a result, Transamerica sued Wabol in a separate action to enforce the new lease.[18] The Superior Court ruled in favor of Wabol and declared the new lease to be unenforceable.[19] At that point Transamerica found itself without a lease and, in the present case, without a claim for restitution pleaded.

Citing the opinion of the Appellate Division and PL 8-32, Transamerica proceeded to argue to the Superior Court on remand in the present case that, based on the Appellate Division's opinion and the new Commonwealth statute, it was entitled to a hearing on restitution. The Superior Court disagreed and denied the request for a hearing. The analysis below shows that the Superior Court did not err in denying Transamerica's request for a hearing, or in declining to apply PL 8-32.

### 1. The Opinion of the Appellate Division

The Appellate Division's opinion states that the Trial Court "should" determine if any unjust enrichment can be avoided. The Superior Court did not read the opinion as mandating the making of such a determination. It interpreted the word "should" as permissive, not mandatory. The question before us now is whether the Superior Court erred in its interpretation of the Appellate Division's opinion. I do not think that it did.

The Superior Court's interpretation is consistent with the ordinary meaning of the word "should." The word "should" means "usually no more than an obligation of propriety or expediency, or a moral obligation . . . . [I]t does not ordinarily express certainty as 'will' sometimes does."[20] In short, the Appellate Division urged the Trial Court to make a determination, but, by using permissive language, it left the decision whether to do so within the sound discretion of the Trial Court.

In *Loren v. E'Saipan Motors, Inc.*,[21] we recognized two relevant and significant points. First, "the appellate court was specific as to what the lower court was to do on remand."[22] Second, it was "not a case where the

[16] Act of Oct. 29, 1993, PL 8-32 (codified at 2 CMC § 4941 et seq.).

[17] *Wabol v. Muna*, 2 CR 963, 981 (D.N.M.I. App. Div. 1987) (emphasis added).

[18] *See Transamerica v. Wabol*, Civ. No. 93-0441 (N.M.I. Super. Ct. filed Mar. 30, 1993).

[19] *See id.* (N.M.I. Super. Ct. Dec. 1, 1994) (summary judgment order), *appeal docketed*, App. No. 94-048 (N.M.I. Sup. Ct. Dec. 21, 1994).

[20] BLACK'S LAW DICTIONARY 1379 (6th ed. 1990).

[21] 1 N.M.I. 133 (1990).

[22] *Id.* at 138.

appellate court left discretion to the lower court."[23] These two aspects of *Loren* make it distinguishable from the case at bar.

Here, the Appellate Division was not as precise in its instructions to the trial court as the appellate court was in *Loren*. Most importantly, the Appellate Division in the present case left discretion to the lower court. If it had stated that the trial court "shall," "must" or "is directed" to adjudicate a claim of unjust enrichment, the trial court certainly would have had no choice but to conduct such an adjudication. However, that is not what happened.

With respect to the Superior Court's exercise of its discretion, the record shows that the court was not only aware of the exceptionally long pendency of this case, but also that permitting Transamerica to raise a claim for restitution at this stage of the proceedings would have been unreasonable and caused further delay. In denying the motion for hearing, the trial court stated: "This case is here now going on 10 years . . . before the parties die . . . let them see the fruits of their litigation."[24] Under these circumstances, the trial court did not err or abuse its discretion in not granting Transamerica's request for a hearing.

## 2. PL 8-32

PL 8-32 mandates that, when a court determines that a real property transaction is void ab initio under Article XII,

> the court shall award an equitable adjustment to any person directly and adversely affected by the judgment who loses possession of or loses any interest in real property as a direct result of the judgment.
>
> The equitable adjustment shall take the form of . . . money . . . and shall be incorporated into the court's final judgment or order.[25]

The statute applies retroactively to "all cases . . . excepting those cases which have been reduced to *final judg-*

*ment* before October 29, 1993."[26] The statute does not define "final judgment."

The dispositive issue is when the judgment in the present case became final.[27] To determine this question, we must first define the term "final judgment" as used in 2 CMC § 4951(e), the statute's retroactivity provision.

The trial court held that the judgment became final in 1992 when the U.S. Supreme Court denied the appellants' petition for a writ of certiorari.[28] This holding is not in error.

A reading of the entire statute (PL 8-32) shows that the legislature used the term "final judgment" in different sections to convey two different meanings. The two meanings correspond to two commonly recognized but distinct uses of that term.

First, "final judgment" may be used to identify a judgment of the trial court that is final for purposes of appeal. *See Commonwealth v. Hasinto*, 1 N.M.I. 377, 380-83 (1990). For example, in 2 CMC § 4951(a), the statute requires that equitable adjustment be in the form of a monetary award to be incorporated into the court's "final judgment." In this context, "final judgment" means the judgment of the trial court, because an equitable adjustment is initially made at the trial court level. Such a judgment is subject to appeal.

Second, "final judgment" may be used to describe the judgment in a case that has reached the court of last resort and can no longer be appealed. *See Griffith v. Kentucky*, 479 U.S. 314, 321 n.6, 107 S. Ct. 708, 712 n.6, 93 L. Ed. 2d 649, 657 n.6 (1987) ("By 'final,' we mean a case in which a judgment . . . has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied"). Here, this is the meaning the legislature clearly intended in 2 CMC §§ 4973(e)[29] and 4982(c),[30]

---

[26] *Id.* § 4951(e) (emphasis added).

[27] Because PL 8-32 is inapplicable in this case, it is not necessary to address its constitutionality.

[28] *See Transamerica v. Wabol*, Civ. No. 93-0441 (N.M.I. Super. Ct. Dec. 1, 1994) (summary judgment order at 2).

[29] This section provides: "The provisions of this article shall apply to all real property transactions involving corporations . . . and shall govern all proceedings in which a final judgment, not subject to further appeal, has not been entered prior to October 29, 1993." 2 CMC § 4973(e).

[30] This section provides: "The provisions of this section shall apply to all real property transactions . . . and shall govern in all proceedings in which a final judgment, not subject to further appeal, has not been entered prior to October 29,

---

[23] *Id.*

[24] *See, e.g.*, Transcript of Plaintiff's Motion for Writ of Possession and Defendants' Motions for Stay Pending Appeal at 42, *Wabol v. Transamerica*, Civ. No. 84-0397 (N.M.I. Super. Ct. May 18, 1994).

[25] 2 CMC § 4951(a).

where the statute specifies "final judgment, *not subject to further appeal.*" (Emphasis added.)

In 2 CMC § 4951(e), the retroactivity provision, the legislature did not specify whether "final judgment" refers to a judgment of the trial court that is final for purposes of appeal, or to a judgment that is not subject to any further review on appeal. However, the fact that this section pertains to the statute's "retroactive effect" makes it similar to *Griffith, supra.* In *Griffith,* the U.S. Supreme Court dealt with the retroactive application of its decisions to cases which are not "final." The term "final judgment" was there defined as not subject to further appellate review.[31] Likewise, when used in the context of the retroactive effect of a statute, "final judgment" here means not subject to further appeal.

The present case went from the Trial Court to the Appellate Division to the Ninth Circuit and, finally, to the U.S. Supreme Court on a petition for a writ of certiorari. Under the above definition, the judgment became final, for purposes of 2 CMC § 4951(e), in 1992 when the U.S. Supreme Court declined to review it.

Transamerica argues that, because this case was remanded for further proceedings, it will not be final until the conclusion of the additional proceedings. This argument has no merit because the Appellate Division's instructions were precatory rather than mandatory. Because the language of the judgment is precatory, and the trial court exercised its discretion not to hold further hearings, there remain no additional proceedings.

In conclusion, PL 8-32 became effective in October 1993. It does not apply to cases that were reduced to final judgment prior to October 1993. As discussed above, the instant case became final in 1992. The Superior Court, therefore, did not err in declining to apply PL 8-32.

For the above reasons, I would affirm the judgment of the Superior Court.

[31] *See Griffith v. Kentucky,* 479 U.S. 314, 321 n.6, 107 S. Ct. 708, 712 n.6, 93 L. Ed. 2d. 649, 657 n.6 (1987).

